**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11** |
| | § | |
| **ROTARY DRILLING TOOLS** | § | **CASE No. 16-33433** |
| **USA, LLC, *et al.*[1]** | § | |
| **Debtors.** | § | **Jointly Administration Requested** |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING
BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTORS'
PROPERTY, (II) SCHEDULING BIDDING DEADLINE, AUCTION DATE AND SALE
HEARING DATE, (III) APPROVING FORM AND NOTICE THEREOF AND (IV)
APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES;  AND (B) ENTRY
OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING THE DEBTORS TO
SELL THEIR PROPERTY, (II) AUTHORIZING THE DEBTORS TO ASSUME AND
ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III)
<u>GRANTING RELATED RELIEF</u>**

     **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU
MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE
WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT
FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
ATTEND THE HEARING.  UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

     **EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT
CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU
WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO
THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE
EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU
SHOULD FILE AN IMMEDIATE RESPONSE.**

---

[1] The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Rotary Drilling Tools USA, LLC (5265), Tubular Repair, LLC (1136), Rotary Drilling Holdings IV, LLC (3309), and Pipe Coatings International LLC (2057).

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (the "***Debtors***"), by and through their undersigned counsel, hereby move pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 6003, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") for (a) Entry of an Order (i) Approving Bidding Procedures in Connection with the Sale of the Debtors' Property, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (iii) Approving Form and Notice Thereof and (iv) Approving Assumption and Assignment Procedures; and (b) Entry of an Order After the Sale Hearing (i) Authorizing the Debtors to Sell Their Property, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (iii) Granting Related Relief (the "***Motion***"). In support of this Motion, the Debtors respectfully represent as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 363(f), 365, 503 and 507, and Bankruptcy Rules 2002(a)(2), 6003, 6004, 6006(a), 9007 and 9014.

## II.      BACKGROUND

### A.      General Background

3.      On July 6, 2016 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue

to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

4.      A description of the Debtors and their business is set forth in greater detail in the *Declaration of Bryan M. Gaston in Support of First Day Pleadings* (the "**First Day Declaration**").

**B.      Specific Background - Pre-Petition Marketing Efforts**

5.      **Piper Jaffray & Co. ("*Piper*") was retained by Rotary Drilling Tools USA, LLC ("*RDT*") to assist with the marketing and sale of the assets of RDT and certain of its subsidiaries, the other Debtors.  Among other things, Piper assisted the Debtors with (a) drafting an offering document describing the Debtors, their operations, historical performance and future prospects; (b) identifying, contacting and screening potential purchasers of the Debtors' assets or business; (c) contacting such potential purchasers; (d) preparing a due diligence data room and coordinating the due diligence investigations of potential purchasers; (e) analyzing proposals received from potential purchasers; and (f) negotiating the financial aspects of the proposed sale transaction.**

6.      **In advance of the marketing process, Piper facilitated the negotiation and execution of a letter of intent ("*LOI*") among the Debtors  and Vallourec Drilling Products ("*Vallourec*"), which provided Vallourec with the right to negotiate a stalking horse agreement with the Debtors on an exclusive basis through May 20, 2016.  The exclusivity preserved the right of the Debtors and Piper to market the assets to other third party buyers (including providing detailed information, data room access, access to facilities and**

meetings with management) during the exclusivity period.  The LOI was executed on April 19, 2016.

7.    Piper had initiated the broad marketing process in early April 2016 and contacted a total of 227 parties to discuss the possibility of purchasing the Debtors' assets, 156 of which were financial groups, 68 of which were strategic groups, and three of which were equipment liquidators.  A total of 67 (30%) of those contacted executed a non-disclosure agreement and received a memorandum describing the Debtors and the prospective opportunity.  After this point in the process, twenty-one parties subsequently expressed their intent to pass on the opportunity.  Nearly all groups that have executed a non-disclosure agreement and have not conveyed an intent to pass (46 remaining groups) have been provided access to an online data room.  Of this number, six groups (not including Vallourec) have visited the Debtors' facility and met with management since late May.

8.    Exclusivity with Vallourec expired on May 20, 2016.  Since that time, the Debtors and Piper have continued the marketing process, allowing other potential purchasers access to the online data room and responding to requests for further information.

9.    At this point, the Debtors believe that the terms proposed by Vallourec represent the best firm offer for the assets.  Moreover, the Debtors believe that Vallourec's willingness to serve as a stalking horse bidder will afford the Debtors the best opportunity to maximize the final purchase price for their assets.

### III.    RELIEF REQUESTED

10.    By this Motion, the Debtors seek entry of an order (the "***Bid Procedures Order***") (i) approving bidding procedures (the "***Bidding Procedures***") in connection with the sale of

substantially all of the Debtors' assets, (ii) scheduling the bidding deadline, auction date and sale hearing date, (iii) approving form and notice thereof and (iv) approving assumption and assignment procedures. The Debtors submit that the Bidding Procedures will permit interested parties reasonable opportunities, consistent with the Debtors' financial constraints, to evaluate whether to propose a bid for the Debtors' property or equity interests in the Debtors that is higher and better than that certain *Asset Purchase Agreement* dated July 5, 2016 (the "***APA***") between the Debtors and the Proposed Purchaser (as defined below).[2]

11.     In addition, the Debtors seek, at the conclusion of the Sale Hearing (as defined below), entry of an order (a) authorizing the sale of substantially all of the Debtors' assets to Vallourec Drilling Products USA, Inc. (the "***Proposed Purchaser***") or such other person or entity who is the Prevailing Bidder (as defined below), (b) authorizing the assumption and assignment, to the extent necessary, of certain executory contacts and unexpired leases, and (c) granting certain related relief (the "***Sale Order***").

**C.     Approval of Bidding Procedures**

12.     The Bidding Procedures are designed to maximize value for the Debtors' estates and ensure that a marketing and sales process is undertaken by the Debtors in accordance with the timeline required by the Proposed Purchaser, and subject to consultation with the Debtors' postpetition lender, PNC Bank, N.A. (the "***DIP Lender***"). The Bidding Procedures are the result of substantial good faith arm's-length negotiations between the Debtors and the Proposed Purchaser and are summarized as follows:[3]

- <u>Property to be Sold</u>: The Debtors shall offer for sale (the "***Sale***") substantially all of the assets of each of the Debtors as set forth in the APA (such assets collectively referred to herein as the "***Acquired Property***").

---

[2] A copy of the executed APA is attached hereto as <u>Exhibit A</u>.

[3] The description of the Bidding Procedures provided herein is a summary and is qualified in its entirety by reference to the Bidding Procedures attached as **Exhibit 2** to the Bid Procedures Order.

▪ All of the Debtors' right, title, and interest in and to the Acquired Property, or any portion thereof to be acquired, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "*Claims and Interests*"), such Claims and Interests to attach to the net proceeds of the sale of such Acquired Property, except, with respect to the Proposed Purchaser, to the extent otherwise set forth in the APA or, with respect to a Prevailing Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Prevailing Bidder.

• <u>Participation Requirements</u>:   Any Potential Bidder that wishes to participate in the bidding for the Acquired Property must become a "*Qualified Bidder*."  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder: (a) must provide an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors and no less favorable to the Debtors than the confidentiality agreement executed by the Proposed Purchaser[4]; (b) must provide current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Property, current audited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtors and their financial advisors, in consultation with the DIP Lender, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a purchase of the Acquired Property; (c) must provide a preliminary (non-binding) written proposal regarding: (i) the purchase price (including assumed liabilities and the other obligations to be performed or assumed by the Potential Bidder); (ii) any assets expected to be excluded or any additional assets desired to be included; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated corporate, stockholder, internal or regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals and (v) any material conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the APA; provided, that in order to be a Qualified Bid (as defined below) the terms and conditions of such proposal shall not be in the aggregate materially less favorable or more burdensome to the Debtors' bankruptcy estates than those set forth in the APA (as determined by the Debtors, in their reasonable discretion, following consultation with the DIP Lender); and

---

[4] For the avoidance of doubt, parties who executed a confidentiality agreement with the Debtors pre-petition shall not be required to execute a new confidentiality agreement provided that the pre-petition confidentiality agreement is in form and substance acceptable to the Debtors.

(d) be deemed by the Debtors, after consultation with their legal counsel, financial advisors and the DIP Lender, to be reasonably likely to be able to fund and complete the consummation of their proposed transaction on terms no less favorable or burdensome in the aggregate than the terms of the APA and within the time frame acceptable to the Debtors (but not materially in excess of the time frame currently contemplated herein) if selected as the Prevailing Bidder (defined below).

The Proposed Purchaser is deemed a Qualified Bidder and the APA constitutes a Qualified Bid for all purposes.  Each of the DIP Lender and the Debtors' prepetition secured lender, PNC Bank, N.A. (the "***Pre-Petition Lender***") is a Qualified Bidder, and any bid submitted by the DIP Lender or the Pre-Petition Lender shall be deemed a Qualified Bid for all purposes.  A Potential Bidder who satisfies the foregoing prerequisites shall be deemed a Qualified Bidder.  The Debtors reserve the right, in consultation with the DIP Lender, (i) at any time to require any Potential Bidder previously determined to be a Qualified Bidder (other than the Proposed Purchaser, the Pre-Petition Lender, or the DIP Lender) to provide additional evidence of its ability to consummate a transaction based upon a Qualified Bid in order to remain a Qualified Bidder, and (ii) to exclude any such Potential Bidder (other than the Proposed Purchaser, the DIP Lender or the Pre-Petition Lender) from participating further in the Auction process as a result of its inability to satisfy such further requirements to remain a Qualified Bidder.  The Debtors shall provide the DIP Lender with written notice of the names of any Potential Bidders that have been deemed Qualified Bidders and authorize the DIP Lender to communicate directly with any Potential Bidders or Qualified Bidders.

- <u>Due Diligence</u>:  The Debtors may in their reasonable business judgment, and subject to competitive and other business concerns, afford each Potential Bidder such due diligence access to the Acquired Property as the Debtors deem appropriate, after consultation with their counsel and financial advisors.  Due diligence access may include management presentations as may be scheduled by the Debtors, access to electronic data rooms, onsite inspections, and other matters which a Potential Bidder may reasonably request and as to which the Debtors, in their reasonable business judgment, may agree.  The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  The Debtors may, in the exercise of their reasonable business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline (as defined below) until the Auction; *provided*, *however*, that (i) the Prevailing Bidder and Back-Up Bidder shall be permitted to continue to conduct due diligence until closing of the sale; (ii) the Qualified Bid submitted by any such Qualified Bidder (including the Prevailing Bidder and Back-Up Bidder) shall not be subject to any due diligence

contingencies as provided below; and (iii) following the Auction, no Qualified Bidder (including the Prevailing Bidder and Back-Up Bidder) may reduce or alter the purchase price consideration incorporated into their bid for the Acquired Property.  The Debtors may, in their reasonable business judgment, coordinate diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  The Debtors anticipate that they will post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room.  Neither the Debtors nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Acquired Property to any person.  The Debtors make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the APA or the definitive purchase agreement with any Prevailing Bidder.

Each Qualified Bidder shall be deemed to acknowledge and shall represent in any definitive agreement, that it has had an opportunity to inspect and examine the Debtors' businesses and to conduct any and all due diligence prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents in submitting its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors' businesses or the completeness of any information provided in connection with the Bidding Process.

1.      states such Qualified Bidder offers to purchase the Acquired Property upon the terms and conditions substantially as set forth in the APA or pursuant to an alternative structure or terms that the Debtors, in consultation with the DIP Lender, determine are no less favorable or more burdensome to the Debtors' estates than the terms and conditions of the APA;

2.      identifies the cash consideration to be paid for the Acquired Property, or the amount of any credit bid as allowed hereunder;

3.      identifies any liabilities to be assumed in connection with such proposed acquisition of the Acquired Property;

4.      states such Qualified Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Acquired Property on terms and conditions no less favorable or more burdensome to the Debtors' estates than the

terms and conditions contained in the APA (as determined by the Debtors in their reasonable business judgment in consultation with the DIP Lender);

5.      is accompanied by a clean and duly executed purchase and sale agreement or similar agreement (the "**Modified APA**") based on the form of the existing APA, together with a marked Modified APA reflecting any variations from the APA executed by the Proposed Purchaser;

6.      states such Qualified Bidder's offer is not subject to any due diligence or financing conditions, board or other approval (excluding customary regulatory approval that would follow the execution of definitive documentation for such a transaction) and is irrevocable[5] until the closing of the Sale if such Qualified Bidder is the Prevailing Bidder (as defined below) and that such Qualified Bidder agrees to serve as a Back-Up Bidder (as defined below);

7.      contains such financial and other information to allow the Debtors, in consultation with the DIP Lender, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation, such financial and other information which provides the basis for adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve such information on counter-parties to any contracts or leases to be assumed or assumed and assigned in connection with the proposed sale that have requested, in writing, such information;

8.      identifies with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

9.      does not request or entitle such Qualified Bidder to any break-up fee, topping fee, expense reimbursement or similar type of payment (and by submitting a Qualified Bid, a Qualified Bidder shall be deemed to have waived its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code in any way related to the submission of its bid or these bidding procedures);

---

[5] The Back-up Bidder (as defined below) shall be required to keep its bid open and irrevocable until 5:00 p.m. (prevailing Central time) on the date which is the earlier of (i) thirty (30) days after the Sale Hearing (the "**Outside Back-Up Date**") or (ii) the closing of the Sale transaction with the Prevailing Bidder; *provided*, *however*, that under no circumstances shall the Proposed Purchaser be required, without its consent, to keep its bid open and irrevocable for a period longer than that prescribed in section 10.2(c)(vii) of the APA.

10.     fully discloses the identity of each entity that will be bidding in the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation;

11.     is likely to result in a value to the Debtors' estates in the Debtors' reasonable judgment, in consultation with the DIP Lender, that is more than the aggregate of the value of the sum of (a) the Break-up Fee and the Expense Reimbursement, (b) the Additional Payments, (c) the total consideration to be received by the Debtors' estates pursuant to the terms of the APA, (d) any applicable purchase price adjustments, as provided for in the APA, and (e) $250,000;

12.     (i) does not contain any financing contingencies of any kind; (ii) does not contain any due diligence contingencies of any kind; and (iii) contains evidence that the Qualified Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Sale, which evidence is reasonably satisfactory to the Debtors, in consultation with the DIP Lender;

13.     includes evidence of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and performance of the Modified APA;

14.     provides a purchase deposit equal to or greater than the deposit set forth in the APA, which deposit must be deposited with Locke Lord LLP  pursuant to the Wiring Instructions[6] on or before the Bid Deadline;

15.     is irrevocable until the earlier of (x) thirty (30) days after the date of the Sale Hearing (as defined below) and (y) the closing date of the transaction with the Prevailing Bidder or the Back-Up Bidder; and

16.     provides for the Bidding Incentives (as defined below) contained in the APA to be paid in full in cash to the Proposed Purchaser.

The Debtors shall make a determination, in consultation with the DIP Lender, regarding whether a bid is a Qualified Bid, based upon various factors including, without limitation, the net consideration provided by such proposal, the timing of any consideration to be received and the likelihood and timing of consummating such transaction, and shall notify bidders whether their bids have been determined to be qualified by no later

---

[6] "***Wiring Instructions***" means the wiring instructions for Locke Lord LLP's trust account, which are set out in the Bidding Procedures.

than 12:00 p.m. (prevailing Central time) on the third (3rd) calendar day following the Bid Deadline.

- A Qualified Bidder that desires to make a bid shall deliver a written or electronic copy of its bid so as to be received by a date no later than August 19, 2016 (the "***Bid Deadline***"); *provided* that all Qualified Bid requirements must be completed prior to the Bid Deadline.  Within 24 hours of receipt of a bid, the Debtors shall provide a copy of such bid to counsel to the DIP Lender and Proposed Purchaser, *provided*, *however*, that information that was redacted from the APA and/or its exhibits before the APA was provided to a Potential Bidder shall also be redacted from the proposed bid.  The Debtors shall provide copies of all Qualified Bids to all Qualified Bidders by no later than one (1) day before the day of the Auction.

  The Debtors may, in consultation with the DIP Lender, aggregate separate bids from unaffiliated persons to create one "Bid" from a "Qualified Bidder"; *provided*, *however*, that all bidders shall remain subject to the provisions of Bankruptcy Code section 363(n) regarding collusive bidding.

  Prior to the Auction, the Debtors shall determine, in their reasonable judgment after consultation with the Debtors' financial and legal advisors and the DIP Lender, which Qualified Bid should serve as the baseline bid at the commencement of the Auction, based on their analysis of which of the Qualified Bids is likely to result in the highest and best value to the Debtors' estates

  If no timely Qualified Bids other than the Proposed Purchaser's bid are submitted by the Bid Deadline, the Debtors shall not hold an Auction and instead shall request at the Sale Hearing (as defined below) that the Bankruptcy Court approve the APA with the Proposed Purchaser and declare the Proposed Purchaser and the APA to be the Prevailing Bid.

  In the event that the Debtors timely receive one or more Qualified Bids other than the Proposed Purchaser's bid, the Debtors shall, on a date to be determined by the Debtors, in consultation with the Proposed Purchaser and the DIP Lender, conduct an Auction no later than the date that is not later than August 23, 2016 (the "***Auction Date***")

17. only the Proposed Purchaser, DIP Lender, Pre-Petition Lender, and the other Qualified Bidders who have made a Qualified Bid shall be entitled to participate in or  make any subsequent bids at the Auction;

18. the Proposed Purchaser and each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

19. the Proposed Purchaser and the other Qualified Bidders shall appear in person at the Auction or through a duly authorized representative with a valid and enforceable power of attorney or other written proof evidencing their ability to bind such parties which documents shall be delivered to the Debtors prior to or at the Auction;

20. bidding shall commence at the amount and terms of the highest and best Qualified Bid as determined set forth herein;

21. the Proposed Purchaser and each Qualified Bidder may then submit successive bids in increments of at least $250,000 higher than the amount of the highest and best Qualified Bid or the previous bid, as applicable; *provided that* the Debtors shall retain the right to modify the bid increment requirements at the Auction, in consultation with the DIP Lender, without any additional or prior notice;

22. the Proposed Purchaser shall be entitled to submit successive overbids at the Auction and, in calculating the amount of the Proposed Purchaser's overbid, the Proposed Purchaser shall be entitled to a credit bid in an amount equal to the sum of the Additional Payments, the Break-up Fee, and the agreed-upon estimate of the Expense Reimbursement;

23. each Qualified Bidder (including the DIP Lender and Pre-Petition Lender) may make one or more credit bids of some or all of their claims to the full extent permitted by Bankruptcy Code section 363(k), subject to the limitations set forth herein or in the Bid Procedures Order;

24. the Auction will be conducted openly and the Proposed Purchaser and the Qualified Bidders will be informed of the terms of the highest and best previous bid;

25. the Proposed Purchaser and all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the APA or Modified APA at the Auction, *provided that* any such modifications to the APA or Modified APA on an aggregate basis

and viewed in whole, shall not be less favorable or more burdensome to the Debtors' estates, as determined by the Debtors (in consultation with the DIP Lender), than the terms of the highest and best Qualified Bid at that time;

26.     the Auction shall continue until there is only one offer that the Debtors determine, in consultation with the DIP Lender and subject to Bankruptcy Court approval, is the highest or best from among the Qualified Bids submitted at the Auction (the "***Prevailing Bid***"). In making this decision, the Debtors (in consultation with the DIP Lender) shall consider, without limitation, the amount of the Purchase Price or other amounts to be paid to Seller, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the APA requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Prevailing Bid shall become the "***Prevailing Bidder***" and shall have such rights and responsibilities of the purchaser, as set forth in the applicable APA or Modified APA; and

27.     the Debtors, in consultation with the DIP Lender, may adopt such other rules for the Auction (including procedural rules and rules that may depart from those set forth herein) that they reasonably determine will result in the highest or otherwise best value for the Debtors' estates and that are not inconsistent with any Bankruptcy Court order, *provided that* any changed or additional rules of the Auction are not materially inconsistent with the Bidding Procedures, do not favor one Qualified Bidder over another, and are communicated to all participants at or prior to the Auction.

The Prevailing Bid will be subject to approval by the Bankruptcy Court. The hearing to approve the Prevailing Bid (the "***Sale Hearing***") shall take place no later than i following the conclusion of the Auction. At such time, the Debtors will seek the entry of an order of the Bankruptcy Court approving and authorizing the Sale to the Prevailing Bidder on the terms and conditions of the Prevailing Bid. The Prevailing Bidder shall appear at the Sale Hearing personally or through a duly authorized representative who will be prepared to testify in support of the Prevailing Bid and the Prevailing Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

Except as provided herein, all deposits shall be returned to each bidder not selected by the Debtors as the Prevailing Bidder no later than five (5) business days following the substantial consummation of the sale to the Prevailing Bidder, except for the Back-Up Bidder (as defined below)

whose deposit will be returned by no later than the fifth (5th) business day after the earlier to occur of: (a) the closing of the sale transaction with the Prevailing Bidder or (b) the Outside Back-Up Date (as defined below). Notwithstanding the foregoing, the deposit of the Proposed Purchaser shall be disbursed in accordance with the terms of the APA.

[iii] If an Auction is conducted, the party with the next highest and best Qualified Bid (other than the Proposed Purchaser), as determined by the Debtors in the exercise of their business judgment, and in consultation with the DIP Lender, at the Auction shall serve as a back-up bidder (the "***Back-up Bidder***") and keep such bid open and irrevocable until 5:00 p.m. (prevailing Central time) on the date which is the earlier of (i) thirty (30) days after the date of the Sale Hearing (the "***Outside Back-up Date***") or (ii) the closing of the Sale transaction with the Prevailing Bidder. Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved Sale because of (a) the failure of a condition precedent beyond the control of either the Debtors or the Prevailing Bidder or (b) a breach or failure to perform on the part of such Prevailing Bidder, the Back-up Bidder will be deemed to be the new prevailing bidder, and the Debtors will be authorized to consummate the Sale with the Back-up Bidder without further order of the Bankruptcy Court, *provided*, *however*, that if the Proposed Purchaser is the Back-up Bidder, the Debtors shall be required to consummate the Sale to the Back-up Bidder should the Prevailing Bidder fail to consummate the approved Sale.[7]  In the case of (b) above, the defaulting Prevailing Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Prevailing Bidder.

Reservation of Rights:  The Debtors reserve their rights, in the exercise of their fiduciary obligations, and in consultation with the DIP Lender, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Acquired Property, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Acquired Property at any time prior to or during the Auction or canceling the Auction, all of which shall be based on an exercise of the Debtors' business judgment in consultation with the DIP Lender.

Notwithstanding the forgoing and subject in all respects to the APA and the Debtors' fiduciary duties, (a) the Debtors may not impair or modify the

---

[7] For the avoidance of doubt, if the Prevailing Bidder fails to consummate the purchase and the purchase is ultimately consummated with the Proposed Purchaser (in their capacity of the Back-up Bidder), the Proposed Purchaser may credit the Bidding Incentives against the purchase price, *provided*, *however*, that in no event shall the consideration tendered by the Proposed Purchaser be less than that provided for in the APA.

Proposed Purchaser's  rights and obligations under the APA or (b) in the event the Debtors (i) elect to withdraw from the Auction the Acquired Property, (ii) cancel the Auction, and/or (iii) reject all Qualified Bids, the Debtors shall, subject to the initial provision of this paragraph, nonetheless be obligated to request at the Sale Hearing that the Bankruptcy Court approve the APA with the Proposed Purchaser.

**D.      Approval of Buyer Protections**

13.      To induce the Proposed Purchaser to expend the time, energy and resources necessary to submit a stalking horse bid, the Debtors have agreed to provide the Proposed Purchaser with and seek this Court's approval of certain bid protections pursuant to the terms of the APA.  The APA provides for the payment to the Proposed Purchaser of a break-up/topping fee equal to $360,000 (the "***Break-up Fee***").

14.      In addition, the APA provides, in the event that the Proposed Purchaser is not the Prevailing Bidder, for the reimbursement of the Proposed Purchaser's costs and expenses (including reasonable legal, accountant and other consultant and advisor fees and expenses) incurred in connection with the transaction contemplated in the APA in an amount equal to (a) the Additional Payments (as defined in the APA), plus (b) the lesser of (i) the actual amount of the Proposed Purchaser's costs and expenses and (ii) $600,000 (the "***Expense Reimbursement***" and together with the Additional Payments and the Break-up Fee, the "***Bidding Incentives***").   The APA further provides that the Debtors' obligation to pay the Bidding Incentives pursuant to the APA shall constitute an administrative expense of the Debtors under Bankruptcy Code sections 503(b) or 507.

15.      The Debtors believe that the Bidding Incentives are fair and reasonable in light of the circumstances. If such protections are triggered, the Proposed Purchaser's efforts will have increased the chances that the Debtors will receive the highest or otherwise best offer for the Assets to the benefit of the Debtors' estates.

E.      **Approval of Notice Procedures**

16.      To preserve the Debtors' going-concern value, the Debtors wish to proceed to the Auction and Sale Hearing as expeditiously as the Court's calendar will allow, while providing the requisite notice of the proposed sale as required under Bankruptcy Rule 2002.

17.      Not later than three (3) business days after entry of the Bid Procedures Order, the Debtors will serve a copy of the Notice of Auction and Sale Hearing (the "***Sale Notice***"), as well as a copy of this Motion and the Bid Procedures Order, by first-class mail postage prepaid upon (i) the Debtors' secured prepetition and postpetition lenders; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Property; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts (as defined below); (ix) all other parties known to the Debtors who have asserted or may assert liens, claims or interests (including, but not limited to, rights of first refusal, preferential rights of purchase, rights of consent, or charges or interests of any kind or nature that impose any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership) in or against any of the Acquired Property; (x) the Debtors' forty (40) largest unsecured creditors; (xi) those other parties identified in section 11.1 of the APA; (xii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xiii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Property.

18.      In addition, on or before five (5) business days after the entry of the Bid Procedures Order, the Debtors shall publish a notice of the Auction and Sale Hearing (the "***Publication Notice***") in the national edition of <u>The Wall Street Journal</u>.

**F.      Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

19.      To facilitate and effect the Sale, to the extent necessary, the Debtors may be required to assume or, in the event of a sale of assets rather than a sale of equity interests assume and assign to the Prevailing Bidder, certain executory contracts and unexpired leases (collectively, the "***Assumed and Assigned Contracts***").  No later than seven (7) calendar days following the entry of the Bid Procedures Order, the Debtors shall cause notice to be provided to any counterparties to executory contracts and unexpired leases that may be Assumed and Assigned Contracts pursuant to the APA (the "***Cure Notice***").  The Cure Notice shall provide the counterparties to such Assumed and Assigned Contracts notice of the amount that the Debtors believe must be cured upon assumption and assignment as required under Bankruptcy Code section 365 (the "***Cure Amount***").  Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance, asserted conditions to assumption and/or assignment, or objections to the Cure Amounts set forth in the Cure Notice, must be in writing and filed with the Court within fourteen (14) calendar days of the date on which the Cure Notice is served.

20.      In the event that any Qualified Bid requires the assumption and assignment of any Assumed and Assigned Contract not identified in the Cure Notice, the Debtors, within three (3) business days following the receipt of such Qualified Bid, shall cause notice to be provided to any counterparties to the additional Assumed and Assigned Contract specified in such Qualified Bid (the "***Supplemental Cure Notice***"), and the Supplemental Cure Notice shall provide the counterparties to the additional Assumed and Assigned Contract notice of the amount that the Debtors believe must be cured upon assumption and assignment as required under Bankruptcy

Code section 365 (such amount also referred to herein as a "***Cure Amount***").  Any objections to the assumption and assignment of such additional Assumed and Assigned Contracts, including, but not limited to, objections related to adequate assurance of future performance, asserted conditions to assumption and/or assignment, or objections to the cure amounts set forth in the Supplemental Cure Notice, must be in writing and filed with the Court not later than three (3) business days prior to the Sale Hearing (the "***Objection Deadline***").

21.     If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice (or Supplemental Cure Notice, if applicable) will be binding upon the non-debtor party or parties to the Assumed and Assigned Contract for all purposes in these chapter 11 cases and otherwise.  All such counterparties to the Assumed and Assigned Contracts will (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Prevailing Bidder that any additional amounts are due or other defaults exist, that conditions to assumption and/or assignment must be satisfied under such Assumed and Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Contracts.

22.     If a non-debtor counterparty to an Assumed and Assigned Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing.

## IV.  ARGUMENTS AND AUTHORITIES

**G.  The Bidding Procedures Are Fair and Are Designed To Maximize the Value Received for the Acquired Property Given the Financial Exigencies Facing the Debtors.**

24.  The Bidding Procedures proposed herein are designed to maximize the value received for the Acquired Property by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids, taking into account the financial exigencies facing the Debtors.

25.  The Bidding Procedures and service and publication of the Sale Notice provide Potential Bidders with the twenty-one day notice envisioned by Rule 2002 of the Bankruptcy Rules, which provides sufficient notice and opportunity to acquire the information necessary to submit a timely and informed bid.  The liquidity crisis facing the Debtors precludes a more extended process, and the Debtors believe that the period between the Petition Date and the deadline for submission of bids provides a reasonable means for maximizing the return from sale of the Acquired Property within the financial constraints faced.  This conclusion is supported by the fact that pre-petition, the Debtors and their professionals aggressively marketed the assets, properties and equity of the Debtors.

26.  At the same time, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select the highest or best offer for the completion of the Sale.  Entering into the APA with the Proposed Purchaser ensures fair value by setting a minimum purchase price and exposing such bid to testing by the marketplace.  Accordingly, the Debtors and all parties in interest can be assured that, taking into account the financial condition of the Debtors, the consideration paid for the Acquired Property will be fair,

reasonable, and in the best interest of the Debtors' estates and creditors, and there are sound business reasons to approve the Bidding Procedures.

## H.     Approval of the Bid Protections Is Warranted and Appropriate

27.     As stated above, the Debtors have aggressively marketed their assets, properties and equity interests.  Although the Debtors have determined, in their reasonable business judgment, that the Sale should be subject to the Auction, the Debtors' ability to maximize value to their estate and creditors through such Auction may be impaired absent the Proposed Purchaser and the minimum sale value for the Acquired Property established by the APA.  As a result, the Debtors request authority to pay the Proposed Purchaser the Bidding Incentives as set forth in the APA.

28.     Courts have acknowledged that the approval of break-up fees and expenses in connection with substantial sales in bankruptcy is warranted to compensate an unsuccessful acquirer whose initial offer served as the basis and catalyst for higher or better offers.  *See Asarco, Inc. v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 597-98, 601-03 & n.9 (5th Cir. 2011); *In re JW Res., Inc.*, 536 B.R. 193, 195-96 (Bankr. E.D. Ky. 2015); *In re Hupp Industries, Inc.*, 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992).  As listed in *Hupp Industries*, courts consider various factors in determining whether to authorize break-up fees, such as:

- whether the fee requested correlates with a maximization of value to the debtor's estate;

- whether the transaction in the negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;

- whether the principal secured creditors and the official creditors committee are supportive of the concession;

- whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

- whether the dollar amount of the break-up fee is so substantial that it provided a "chilling effect" on other potential bidders;

- the existence of available safeguards beneficial to the debtor's estate;

- whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

*In re Hupp Indus.*, 140 B.R. at 194-96; *see also In re JW Res.*, 536 B.R. at 195 (approvingly noting *Hupp Industries'* multi-factor test).

29.     To warrant court approval of such break-up fees and expenses, other courts have required a showing that the fee is necessary to preserve the value of, or provide some benefit to, the debtor's estate as required by the plain language of Bankruptcy Code section 503(b)(1)(A) governing the allowance of certain claims as administrative claims. *See Calpine Corp. v. O' Brien Env. Energy, Inc. (In re O'Brien Env. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999); *see also In re Asarco*, 650 F.3d at 602 & n.9 (discussing *In re O'Brien Env. Energy*); *In re JW Res.*, 536 B.R. at 195 (discussing *In re O'Brien Env. Energy*).

30.     Here, the Bidding Incentives to be paid under the circumstances described herein and in the APA satisfy the foregoing tests because they are: (i) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b) and 507(a)(2); (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Proposed Purchaser; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, to the commitments that have been made and the efforts that have been and will be expended by the Proposed Purchaser; and (iv) necessary to induce the Proposed Purchaser to continue to pursue the sale transaction and to continue to be bound by the APA.

31.     The Proposed Purchaser has expended, and will continue to expend, considerable time, money and energy in connection with the Sale and has engaged in extended and lengthy

good faith negotiations.   In particular, the APA is the culmination of an extensive marketing effort and part of an extensive process undertaken by the Debtors and their professionals to identify and negotiate a transaction that the Debtors currently believe to be the highest and best proposal for an acquisition of the Acquired Property in order to maximize the value realized for the benefit of the Debtors' estates, their creditors and other parties in interest.

32.     The Bidding Incentives also induced the Proposed Purchaser to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors and other bidders may rely.   The Proposed Purchaser has already provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price for the Acquired Property will be received.   Accordingly, the Bidding Procedures and the Bidding Incentives are reasonable and appropriate and represent the best method to maximize value for the Debtors' estates.

**I.      The Debtors Have Exercised Sound Business Judgment and Provided Adequate Notice and Opportunity to Object With Respect to Assumed and Assigned Contracts**

33.     Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   11 U.S.C. § 365(a).   The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.   *Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524-25 & n.5 (5th 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996); *In re Pisces Energy, LLC*, No. 09-36591H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009).   Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate.   *In re Pisces Energy*, 2009 WL 7227880, at *6; *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr.

Del. 2001); *see also In re Chi-Feng, Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.*, 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988).

34.     Moreover, a debtor's decision to assume an executory contract or unexpired lease should be accepted "except upon a finding of bad faith or gross abuse of [the debtor's] business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Pisces Energy*, 2009 WL 7227880, at *6 (citing *In re Richmond Metal Finishers* for the same statement). "More exacting scrutiny would slow the administration of the debtors' estates and increase its cost, interfere with the Bankruptcy Court's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing*., 762 F.2d at 1311; *see also In re Asarco LLC*, 441 B.R. 813, 828 (S.D. Tex. 2010) (noting Debtor's invocation of same Richmond Leasing quotation in motion which bankruptcy court granted and the district court confirmed).

35.     Two conditions are imposed upon a debtor's ability to assume and assign an executory contract. *First*,  in order to assume an agreement, pursuant to Bankruptcy Code section 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).  Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  Bankruptcy Code section 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable. *See* 11 U.S.C. § 365(f)(1); *see also, e.g., In re Amidee Capital Group, Inc.*, No. 10-20041, 2010 WL 5141276, at *5 (Bankr. S.D. Tex. Oct. 7, 2010) (treating such prohibitions or limitations as null

and void under section 365(f)); *In re Office Prods. of Am., Inc.*, 140 B.R. 407 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the debtor's estate").

36.     Pursuant to Bankruptcy Code section 365(a), assignment is conditioned on "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *In re PRK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (internal quotations omitted); *see also Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *Accord In re PRK Enters., Inc.*, 235 B.R. at 603 ("The financial evidence presented by [assignee] demonstrates the likelihood that it has the financial capacity to perform its future obligations under the lease agreements and that its principal officers are serious in their commitment to rehabilitate this corporation."); *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

37.     Here, the Prospective Purchaser is an entity with financial resources adequate to perform under the respective executory contracts and unexpired leases.  Additionally, the Debtors

respectfully submit that the proposed cure procedures for the identification and payment of Cure Amounts (the "**Cure Procedures**") are appropriate and reasonably tailored to provide non-Debtor counter-parties to potential assumed and assigned contracts with adequate notice of the proposed assumption and assignment of their applicable contract, as well as the proposed Cure Amounts related thereto, if any.  Such non-Debtor parties to the potential assumed or assumed and assigned contracts are given an opportunity to object to the proposed assumption and assignment and, in the event an objection is not resolved, this Court will adjudicate the dispute, including issues pertaining to adequate assurance of future performance.  Accordingly, the Debtors submit that implementation of the proposed Cure Procedures is appropriate in these cases.

**J.      The Sale of the Acquired Property Is Authorized Under Bankruptcy Code Section 363(b)**

38.      At the conclusion of the Sale Hearing, the Debtors request that the Court approve the sale of the Acquired Property to the Proposed Purchaser or such other Qualified Bidder who submits the Prevailing Bid.  The Debtors submit that the sale of the Acquired Property to the Proposed Purchaser pursuant to the APA, or such other agreement as the Debtors may reach with the party submitting the Prevailing Bid, is in the best interest of the Debtors' estates and their creditors.

39.      Bankruptcy Code section 363(b)(1)  provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the debtor's decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983), which decision has been adopted in this circuit.  *Institutional Creditors of Continental Air Lines,*

*Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, at 1226 (5th Cir. 1986); *see also In re Asarco*, 650 F.3d at 601; *In re Cowin*, No. 13-30984, 2014 WL 1168714, at * (Bankr. S.D. Tex. March 21, 2014); *In re St. Marie Clinic PA*, No. 10-70802, 2013 WL 5221055, at *9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Industries, Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).

40.     The business judgment rule shields a debtor's management from judicial "second-guessing."  *In re Genco Shipping & Trading, Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Filene's Basement*, LLC, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. April 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction.").

41.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).  When applying the business judgment standard, courts show great deference to a debtor's business decisions.  *See In re Asarco*, 441 B.R. 813, 828 (describing the business judgment standard as "deferential"); *In re Trans World*

*Airlines*, 2001 Bankr. LEXIS 267 at *45-50 (Bankr. D. Del. 2001) (describing business judgment rule as a "very deferential standard"); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687 at *8-9 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

42.     Here, the fairness and reasonableness of the consideration to be paid for the Acquired Property by the Proposed Purchaser, as may be declared at the Sale Hearing, will be conclusively demonstrated by the exposure of the Acquired Assets to the marketplace.   The Debtors have proposed a fair and open process for achieving the objective of obtaining the highest or best offer and sale of the Acquired Property for the benefit of the Debtors' estates and their creditors.   The Debtors have insufficient liquidity to continue operations absent a substantial funding commitment, and the Debtors' decision to proceed with the sale process is consistent with sound business judgment.   Under the circumstances, the Bidding Procedures and Auction process represent the best way to achieve substantial consideration for the Debtors' businesses, and offer the best resolution to the Debtors' current financial situation in the manner that will maximize value to the Debtors' estates and their creditors.

**K.     The Sale of The Acquired Property Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

43.     The Debtors respectfully submit that it is appropriate to sell the Acquired Property free and clear of all liens, claims, encumbrances and other interests, pursuant to Bankruptcy Code sections 363(f), with all such interests attaching to the net sale proceeds of the Acquired Property to the extent applicable.   Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

- applicable nonbankruptcy law permits sale of such property free and clear of such interests;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

- such interest is in bona fide dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

44.     Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Acquired Property free and clear of the interests.  *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, *12 (Bankr. S.D.N.Y. 1992) ("Section 363(f) is in the disjunctive, such that the sale free of interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

45.     Here, the Debtors believe that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Property pursuant to a Sale Order.   In particular, the Debtors believe that section 363(f)(2) will be satisfied.

**L.    A Prevailing Bidder Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).**

46.    Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

47.    Here, the APA was negotiated at arm's length by sophisticated parties, each represented by their own counsel and financial advisors, and following significant due diligence. Accordingly, the Debtors request that the Sale Order include a provision that the Prevailing Bidder for the Assets, is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m).  The Debtors believe that providing the Prevailing Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Assets and closing of the same will occur promptly.

## V.    <u>NOTICE</u>

48.    Notice of this Motion has been given to (i) the DIP Lender; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Property; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts; (ix) all other parties known to the Debtors who have asserted or may assert liens, claims or interests (including, but not limited to, rights of first refusal, preferential rights of purchase, rights of consent, or charges

or interests of any kind or nature that impose any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership) in or against any of the Acquired Property; (x) the Debtors' forty (40) largest unsecured creditors; (xi) those other parties identified in section 11.1 of the APA; (xii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xiii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Property.  The Debtors submit that no further notice is required.

## VI.      NO PRIOR REQUEST

49.     No previous motion for the relief requested herein has been made to this or any other court.

## VII.      CONCLUSION

Wherefore, the Debtors respectfully request that the Court (i) issue the Bid Procedures Order, substantially in the form attached hereto as **Exhibit B**, (ii) issue the Sale Order, substantially in the form attached hereto as **Exhibit C**, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: July 6, 2016
     Houston, TX

Respectfully submitted,

*/s/ Elizabeth M. Guffy*
Elizabeth M. Guffy
Texas State Bar No. 08592525
Omer F. Kuebel, III
Federal Bar No. 32595
Brooke B. Chadeayne
Texas State Bar No. 24072030
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, TX 77002
Telephone: 713-226-1200
Facsimile: 713-223-3717
E-mail:    eguffy@lockelord.com
             bchadeayne@lockelord.com
             nobankecf@lockelord.com

**PROPOSED COUNSEL FOR RDT USA, LLC,
*ET AL.***

## CERTIFICATE OF SERVICE

The undersigned certifies that this Motion was served electronically on July 6, 2016 via ECF those parties registered to receive ECF service.

*/s/ Elizabeth M. Guffy*
Elizabeth M. Guffy