

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/24/2016

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11** |
| | § | |
| **ROTARY DRILLING TOOLS** | § | **CASE No. 16-33433** |
| **USA, LLC, *et al.*[1]** | § | |
| **Debtors.** | § | **Jointly Administration Requested** |
| | § | |

**ORDER (I) AUTHORIZING THE DEBTORS TO SELL THEIR PROPERTY, (II)
AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
EXECUTORY <u>CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING
RELATED RELIEF</u>
[Relates to Dkt. No. 6]**

Upon the *Debtors' Motion for Entry of an Order (i) Authorizing the Debtors to Sell Their Property, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iii) Granting Related Relief* (the "***Motion***");[2] and after the conclusion of the hearing on the approval of the Bidding Procedures, the Court having entered an order dated August 2,2016 (the "***Bid Procedures Order***"), in which the Court, among other things, approved the Bidding Procedures and scheduled a hearing (the "***Sale Hearing***") on the sale of the Acquired Property (as such term is defined in the Bidding Procedures); and the Debtors having determined that the highest and otherwise best offer for the sale of the Acquired Property submitted at the auction, conducted on August 23,2016 (the "***Auction***"), was made by Aplicaciones Tubulares S.L. (the "***Purchaser***") with such sale to be made pursuant to the asset purchase agreement constituting the Prevailing Bid (as defined in the Bidding Procedures) (the "***APA***"); and the

---

[1] The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Rotary Drilling Tools USA, LLC (5265), Tubular Repair, LLC (1136), Rotary Drilling Holdings IV, LLC (3309), and Pipe Coatings International LLC (2057).

sale will be to a United States entity that is to be formed (or has been formed) by the Purchaser; and the Court having held the Sale Hearing on the approval of the sale of the Acquired Property pursuant to the terms and conditions of the APA (the "*Sale*"); and the Court having considered (i) the Motion, (ii) the APA; (iii) the objections to the Sale (collectively, the "*Sale Objections*"), (iv) the arguments and statements of counsel made, and the evidence submitted, proffered or adduced, at the Sale Hearing, (v) the record in these bankruptcy cases, and (vi) the responses to the Sale Objections; and the Court having determined that the relief requested in the Motion and the Sale to the Purchaser in accordance with the APA is in the best interests of the Debtors, their estate, their creditors and other parties in interest; and it appearing that reasonable and adequate notice of the Motion, the Bidding Procedures, the Auction and the Sale Hearing have been provided to all persons required to be served in accordance with title 11 of the United States Code (the "*Bankruptcy Code*"), the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and the local rules and orders of this Court (the "*Local Rules*"); and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:** [3]

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

1.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1408.

1.     The statutory predicates for the relief requested herein are sections 105(a), 363(b), (f) and (m), 365, 503 and 507 of the Bankruptcy Code and Rules 2002(a)(2), 6003, 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014 of the Bankruptcy Rules.

2.     Notice of the Motion, having been given to (i) the DIP Lender; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Property; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts; (ix) all other parties known to the Debtors who have asserted or may assert liens, claims or interests (including, but not limited to, rights of first refusal, preferential rights of purchase, rights of consent, or charges or interests of any kind or nature that impose any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership) in or against any of the Acquired Property; (x) the Debtors' forty (40) largest unsecured creditors; (xi) those other parties identified in section 11.1 of the APA; (xii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xiii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Property (collectively, the "***Notice Parties***") and notice of the Bid Procedures Order having been given to the parties on the Debtors'

customer list, is sufficient and proper in light of the circumstances and the nature of the relief requested in the Motion.

3.     Notice of the Debtors' proposed assumption and assignment of Assigned Contracts, together with cure costs ("**Cure Costs**") related thereto (the "**Notice of Assumption and Assignment**"), having been properly served upon the counter-parties to such assumed and assigned contracts pursuant to the Bid Procedures Order, is sufficient and proper in light of the circumstances and the nature of relief requested in the Motion.

4.     The Publication Notice was published in the national edition of *The Wall Street Journal* on August 5, 2016.  Such Publication Notice complied with the Bidding Procedures Order and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

5.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including without limitation, (i) approval of the sale of the Acquired Property to the Purchaser and (ii) approval of the assumption and assignment of executory contracts and unexpired leases required by the Purchaser.

6.     The Auction occurred on August 23, 2016 in accordance with the Bid Procedures Order.  The Auction was properly conducted in a manner designed to result in the highest or otherwise best offer for the Acquired Property.  At the Auction, the Debtors agreed in an exercise of their business judgment, in consultation with their management and advisors, the Official Committee of Unsecured Creditors (the "**Committee**"), and the DIP Lender, to enter into and consummate the APA.  The consummation of the transactions contemplated by the APA, the Motion, and this Sale Order is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

7.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing,  and the representations of counsel made on the record at the Bid Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Property and conducted the sale process in compliance with the Bid Procedures Order; (b) a reasonable opportunity has been given to any interested party to make the highest or otherwise best offer for the Acquired Property; (c) the consideration provided by the Purchaser in the APA constitutes the highest or otherwise best offer for the Acquired Property; (d) the consideration provided by the Purchaser in the APA provides fair and reasonable consideration for the Acquired Property and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Property than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Acquired Property for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the APA constitutes the highest or otherwise best offer for the Acquired Property constitutes a valid and sound exercise of the Debtors' business judgment.

8.      The Debtors and their advisors have complied in all respects with the Bid Procedures Order.  In that regard, the Debtors (i) considered all bids submitted on or before the Bid Deadline; (ii) negotiated with all bidders up to and including at the Auction; and

(iii) conducted the Auction in accordance with the Bidding Procedures. The Auction was conducted in a manner that was reasonably certain to achieve the highest and best offer for the Acquired Property.

9.    At the conclusion of the Auction, the Debtors announced that they had determined that the offer submitted by Purchaser was the highest and best offer, and that Purchaser was the Prevailing Bidder in accordance with the Bid Procedures Order. Vallourec Drilling Products USA, Inc. provided the second highest or otherwise best bid and, accordingly, is the Back-up Bidder.

10.    Upon entry of this Sale Order, (i) the Debtors have full corporate power and authority to execute the necessary documents to effect the Sale, (ii) the Debtors have all of the corporate power and authority necessary to consummate the Sale with the Purchaser, (iii) the Debtors have taken all necessary corporate action necessary to authorize and approve the Sale, the applicable documents and the consummation by the Debtors of the transactions contemplated thereby and (iv) no consents or approvals are required for the Debtors to consummate the Sale.

11.    The relief requested in the Motion (including, without limitation, the approval of the Sale of the Acquired Property pursuant to Bankruptcy Code section 363) is a necessary and appropriate step toward enabling the Debtors to maximize the value of their bankruptcy estates, and it is in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these cases. In addition, a Sale of the Acquired Property is necessary to preserve and maximize value and avoid continuing losses to the Debtors' estates.

12.     The Debtors have exercised sound business judgment in deciding to sell the Acquired Property to the Purchaser, including in light of the facts that (i) the bid submitted by the Purchaser constitutes the highest and best offer for the Acquired Property, as established by, among other things, the Auction; (ii) the APA and the closing of the transactions contemplated thereby will present the best opportunity to realize the highest value for the Acquired Property; and (iii) without the Sale, there will be continuing losses to the detriment of the Debtors' estates, their creditors and all other parties in interest.

13.     A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein as well as to the Sale has been afforded to all interested persons and entities, including the Notice Parties.

14.     The Debtors have demonstrated both good, sufficient and sound business purpose and justification for the Sale, among other things:

- Given these circumstances, the Purchaser is only willing to proceed with the Sale if the Sale is approved by the Bankruptcy Court and is able to close the Sale in a timely manner.

- The Debtors have secured the highest or otherwise best offer for the Acquired Property by giving sufficient notice to interested parties regarding the Auction.  On  August 4, 2016 the Debtors served the Sale Notice on the Notice Parties.  In addition, on August 5, 2016, the Debtors published the Publication Notice in the national edition of *The Wall Street Journal*.

- In response to the Debtors' efforts, the Debtors received two bids (in addition to the stalking-horse bid reflected in the Motion).  Both of such bids were found to be Qualified Bids in accordance with the Bid Procedures Order and eligible to participate in the Auction.

- The purchase price and the other terms and conditions set forth in the APA represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Acquired Property.  A sale of the Acquired Property at this time to the Purchaser preserves the value of the Acquired Property and maximizes the Debtors' estates for the benefit of all constituencies.

- Due cause exists for making this Sale Order effective immediately based upon the ongoing drain on the Debtors' estates and the other facts set forth in the Motion and adduced at the Sale Hearing.

15.    The Purchaser is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed or exists between the Purchaser and the Debtors.  The transfer of the Acquired Property to and the assumption of the Assumed Obligations (including any individual elements of the Sale) by the Purchaser, except as otherwise set forth in the APA, does not, and will not, subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability.  Pursuant to the APA, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets or assuming the Excluded Obligations, and the Purchaser is not holding itself out to the public as a continuation of the Debtors.  The Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and the Purchaser.  The Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.  None of the transactions contemplated by the APA, including, without limitation, the Sale or the assumption and assignment of the Assigned Contracts, is being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying, or defrauding

creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

16.     The Debtors and the Purchaser, including their agents and representatives, negotiated the APA and the other related documents in good faith, without collusion, and at arms' length within the meaning of Bankruptcy Code section 363(m).  The Purchaser is a good faith purchaser under Bankruptcy Code section 363(m), and as such is entitled to the protections of Bankruptcy Code section 363(m).

17.     Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Sale or the transactions contemplated thereby to be avoided or otherwise challenged under Bankruptcy Code section 363(n).

18.     The bid submitted by the Purchaser is the highest and best offer received by the Debtors after a period in which third parties had sufficient opportunity to seek information and enter into discussions or negotiations with the Debtors and their advisors concerning the Sale.  The consideration offered by the Purchaser pursuant to and as a result of the Auction is fair and reasonable and constitutes fair and adequate consideration and reasonably equivalent value for the Acquired Property.

19.     If the Debtors did not sell the Acquired Property free and clear of all encumbrances and interests, the interest of prospective bidders would be diminished and the Purchaser would not have submitted a bid and would not consummate the Sale or the transactions contemplated by the Sale, thus adversely affecting the Debtors, their estates and their creditors, if the Sale were not free and clear of all Interests or Claims, or if the Purchaser would, or in the future could, be liable for any of the Interests or Claims.

20.     The Debtors may sell the Acquired Property free and clear of all Interests or Claims because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) have been satisfied.  All holders of Interests or Claims that did not object to the Sale are deemed to have consented to the Sale, pursuant to Bankruptcy Code section 363(f)(2).  In addition, all holders of Interests or Claims that did object fall within one or more of the other subsections of Bankruptcy Code sections 363(f) and are adequately protected by having their Interests or Claims, if any, attach to the cash proceeds (the "*Cash Proceeds*") of the Sale.

21.     The Sale is or will be a legal, valid and effective transfer of the Acquired Property to the Purchaser vesting the Purchaser with title to, and all other right, title and interest to the Acquired Property on the closing of the Sale free and clear of any Interests or Claims pursuant to Bankruptcy Code sections 105, 363(b) and 363(f).

22.     The Debtors have demonstrated that it is an exercise of their sound business judgment to sell, assume, and assign the unexpired leases and executory contracts designated as contracts to be assumed and assigned on Schedule 2.2(a) of the APA (collectively, the "*Assigned Contracts*" and, individually, an "*Assigned Contract*") to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Purchaser are an integral part of the Acquired Property being purchased by the Purchaser, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance or preserve the value of the Debtors' bankruptcy estates.

23.     The Debtors have cured or the Debtors have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A), which cure costs shall be paid by the Purchaser.  The proposed cure costs or any other cure amount reached by agreement after any objection by a counterparty to an Assigned Contract (an "*Assigned Contract Objection*") are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code section 365(b), under such Assigned Contracts.  The Purchaser's promise to perform the obligations under the Assigned Contracts arising after the Closing shall constitute adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code sections 365(b)(1) and 365(f)(2).  All counterparties to the Assigned Contracts who did not file an Assigned Contract Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Purchaser.  The Court finds that, with respect to all such Assigned Contracts, the payment of the proposed Cure Costs in accordance with the terms of the APA is appropriate and is deemed to fully satisfy the Debtors' obligations under Bankruptcy Code section 365(b).  Accordingly, all of the requirements of Bankruptcy Code section 365(b) have been satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the Assigned Contracts.  To the extent any Assigned Contract is not an executory contract within the meaning of Bankruptcy Code section 365, it shall be transferred to the Purchaser in accordance with the terms of this Sale Order that are applicable to the Acquired Property.

24.     Anti-assignment provisions in any Assigned Contract shall not restrict, limit or prohibit the assumption, assignment and sale of the Assigned Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of Bankruptcy Code section 365(f).

25.     The consummation of the Sale outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The APA, the Sale and the transactions contemplated therein and associated therewith do not constitute a *sub rosa* plan of reorganization.  Moreover, no party has objected to the sale under § 363, outside of a plan.  Accordingly, the substantive and procedural safeguards available under § 1129 have not been invoked.

26.     All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing or in the Bid Procedures Order are incorporated herein.

27.     This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.     The relief requested in the Motion is GRANTED as set forth below.

B.     The Sale of the Acquired Property to the Purchaser is hereby approved, and the Debtors are authorized to undertake any and all actions necessary or appropriate to consummate the Sale.

C.      All objections, if any, to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at Sale Hearing or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

**Approval of the Sale Documents and Actions Relating Thereto**

D.      Pursuant to Bankruptcy Code section 363(b), the Sale, the APA and other related sale documents and the transactions contemplated thereby are approved in all respects.

E.      Pursuant to Bankruptcy Code section 363(b) and 1123(b), the Debtors are hereby authorized and directed to sell the Acquired Property to the Purchaser, to consummate the Sale in accordance with and subject to the terms and conditions of the APA, and to convey title to, and to transfer and assign all right, title and interest (including common law rights) in and to the Acquired Property in accordance with and subject to the terms and conditions of the APA.

F.      The Debtors, their officers, employees and agents are authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Acquired Property, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, or as may be necessary to effectuate the terms of this Sale Order.

G.      The Purchaser is directed to pay all purchase consideration for the Sale set forth in the APA (including, without limitation, all Cash Proceeds of the Sale) directly to

the Debtors' secured lender, PNC Bank, N.A. (the "*Secured Lender*"), in an amount up to

the aggregate amount of outstanding prepetition and postpetition obligations of the Debtors

and their affiliates to the Secured Lender, for indefeasible application by the Secured

Lender to all such outstanding obligations ; provided, however, funds shall be withheld

from the Sale Proceeds by the Debtors in an amount sufficient to pay expenses set forth in

the DIP Budget (to the extent unpaid) and any other amounts determined to be

appropriately reserved by the Debtors, the Secured Lender, and the Committee

(collectively, the "*Holdback Amount*").  The Holdback Amount shall include an amount

sufficient to pay tax liabilities asserted and detailed in the objections set forth on Docket

Nos. 106 and 107 filed by certain taxing authorities (the "*Taxing Authorities*"), plus any

postpetition interest that has accrued or may accrue under Texas law.  In the event that the

Debtors, the Secured Lender, the Committee, and the Taxing Authorities cannot reach an

agreement on the Holdback Amount, the parties may request an expedited hearing to

determine the Holdback Amount prior to distribution of the Sale Proceeds to the Secured

Lender.

**Transfer of the Acquired Property**

      H.      Pursuant to Bankruptcy Code sections 363(b) and 363(f), upon the closing

of the Sale, under the APA, title to the Acquired Property shall be transferred to the

Purchaser free and clear of all:

- liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, servitudes;

- interests, obligations, liabilities, demands, guaranties, options, restrictions, contractual or other commitments;

- rights, including, without limitation, rights of first refusal, rights of offset, contract rights, recoupment rights, and rights of recovery;

- decrees of any court or foreign or domestic governmental entity (to the extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Acquired Property, including, without limitation consent of any person or entity to assign or transfer any of the Acquired Property;

- debts arising in any way in connection with any agreements, acts or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

- claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (including claims that may be secured or entitled to priority under the Bankruptcy Code), tax claims, reclamation claims, and pending litigation claims; and

- matters of any kind and nature, in each instance for all of the foregoing, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the foregoing shall be referred to herein as the "***Interests or Claims***").

All such Interests or Claims shall attach to the Cash Proceeds remaining after giving effect to paragraph G of this Order in the order of their priority, with the same validity, force and effect that they now have as against the Acquired Property, subject to any claims and defenses that the Debtors may possess with respect thereto.

I.      Notwithstanding any other provision of this Order, however, the ad valorem tax liens of the Taxing Authorities for the 2016 tax year are hereby expressly retained against the Assets until payment is made to fully satisfy the 2016 ad valorem taxes, and any penalties or interest which may ultimately accrue to those 2016 taxes.

J.      Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement by a governmental unit of any police or regulatory liability that any entity would be subject to as the owner or operator of the Acquired Property after the date of entry of this Order; provided, however, that the foregoing shall not limit, diminish or otherwise alter the Debtors' or Purchaser's defenses, claims, causes of action or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property and nothing herein shall subject the Purchaser to any liability to a governmental unit for penalties or any sort of monetary fines for days of violation prior to closing or response costs incurred by a governmental unit prior to closing.  Nothing in this Order or the APA waives any obligation of the Debtors or the Purchaser to comply with applicable legal requirements under police or regulatory law governing the transfer or assignment of any federal governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval.  Nothing in this Order discontinues any obligation of the Debtors under any governmental license, permit, registration, authorization, or approval until and unless the transfer of such license, permit, registration, authorization, or approval is approved by the applicable governmental unit.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order, subject to the

Debtors' and Purchaser's rights to assert in that forum or before this Court that such laws are not in fact police or regulatory laws..

K.      Following closing of the Sale, no holder of any Interest or Claim against the Debtors or in the Acquired Property shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Property based on or related to such Interest or Claim, or any actions that the Debtors may take in their chapter 11 cases, and all such Interests or Claims, if any, shall be and hereby are channeled, transferred and attached solely and exclusively to the Cash Proceeds in their order of priority.  If the Sale fails to close for any reason, then all Interests or Claims shall continue against the Debtors, and the Acquired Property shall be unaffected by this Order.

L.      All persons and entities, including (without limitation) all holders of Interests,   Claims or other rights, debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders and trade and other creditors, holding Interests or Claims arising in any way in connection with any acts, or failure to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, demands or guaranties, of any kind and nature against or in the Debtors or the Acquired Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtors, the Acquired Property, the operation of the Debtors' businesses prior to closing, or the transfer of the Acquired Property to the Purchaser, hereby are, and will be, forever barred, estopped and permanently enjoined from asserting against the Purchaser, its successors or assigns, their

property, including the Acquired Property, or any designee, such persons' or entities' Interests or Claims.

M.       This Sale Order is and shall be effective as a determination that all Interests or Claims with respect to the Debtors' interest in the Acquired Property shall be, and hereby are, released as to the Acquired Property as of the closing of the Sale.  If any person or entity that has filed liens, financing statements, mortgages, mechanics' liens, *lis pendens* or other documents or agreements evidencing Interests or Claims against or in the Acquired Property has not have delivered to the Debtors prior to the closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, unconditional releases of all Interests or Claims that the person or entity has with respect to the Acquired Property, or otherwise (except as provided in this Sale Order with respect to the Cash Proceeds), the Purchaser is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf and in the name of the person or entity with respect to the Acquired Property or the Purchaser may file, register or record a certified copy of this Order in any place where such instruments would or could be filed, and such filing shall constitute conclusive evidence of the release of Interests or Claims on the Acquired Property as of the closing of the Sale.

**No Successor Liability**

N.       Except to the extent the Purchaser assumes the Assumed Obligations or takes the Acquired Property subject to the Permitted Liens, or as otherwise set forth in the APA, the Purchaser shall not have any successor, transferee, derivative or vicarious liabilities of any kind or character for any Interests or Claims, including under any theory of successor or transferee liability, *de facto* merger or continuity, whether known or

unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, including without limitation, with respect to any of the following: (i) any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, the WARN Act, antitrust, environmental, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (iv) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the (a) Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vi) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and

Liability Act, 42 U.S.C. § 9601 *et seq.*; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any taxes relating to the Acquired Property prior to the Closing; (ix) any bulk sale law; and (x) any litigation. The Purchaser shall have no liability or obligation under the WARN Act simply by virtue of its purchase of assets from the Debtors.

      O.     The Purchaser has given substantial consideration under the APA, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser and which shall be deemed to have been given in favor of the Purchaser by all holders of encumbrances and liabilities (except for Permitted Liens and the Assumed Obligations) in or against the Debtors, or the Acquired Property. Without limiting the Purchaser's obligation to pay and satisfy the Assumed Obligations, upon consummation of the Sale, the Purchaser shall not be deemed to (a) be the successor to the Debtors, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors.

**Release**

      P.     Except for the enumerated obligations of the Purchaser and any permitted assignee(s) under the APA and this Order, effective as of the closing and funding of the transactions contemplated thereby, the Debtors and their affiliates (on behalf of themselves and their estates), to the extent permitted by applicable law, are each hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Purchaser and its affiliates, and their respective past, present and future shareholders,

members, board of directors and/or supervisors, managers, officers, employees, agents, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever at law or in equity, known or unknown, which the Debtors and their affiliates might now or subsequently may have, based on, relating to or arising out of the APA, the transactions contemplated thereby, the ownership, use or operation of the Acquired Property or any properties of the Debtors or the condition, quality, status or nature of the Acquired Property or any properties of the Debtors, including rights to contribution under CERCLA, breaches of statutory or implied warranties, nuisance or other tort actions, rights to punitive damages, common law rights of contribution and rights under insurance maintained by the Debtors or their affiliates.

**Good Faith**

Q.     The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts).  The Purchaser is a purchaser in good faith of the Acquired Property and is entitled to all the protections afforded by Bankruptcy Code section 363(m).

R.     As a good faith purchaser of the Acquired Property, the Purchaser has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Property, and, therefore, neither the Debtors nor any successor in interest to

the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

S.      The consideration provided by the Purchaser for the Acquired Property under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sale may not be avoided under Bankruptcy Code section 363(n). The APA was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser have entered into the APA or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Property for an amount that would provide greater value to the Debtors and their estates than the value provided by the Purchaser. The Court's approval of the motion and the APA is in the best interests of the Debtors, the bankruptcy estates of the Debtors, their creditors, and all other parties in interest.

**Assumption and Assignment of Assigned Contracts**

T.      Pursuant to Bankruptcy Code sections 105(a), 363, and 365 and subject to and conditioned upon the Closing of the Sale, the Debtors' sale, assumption and assignment to the Purchaser of the Assigned Contracts is approved, and the requirements of Bankruptcy Code section 365(b)(1) with respect thereto are deemed satisfied.

U.      The Debtors are authorized and directed in accordance with Bankruptcy Code sections 105(a) and 365 to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Bidding Procedures Order and the APA, the Assigned Contracts free and clear of all Interests or Claims of any kind or nature whatsoever, other than the Permitted Liens and Assumed Obligations, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deems necessary to assign and transfer the Assigned Contracts to the Purchaser.

V.      The Assigned Contracts shall be transferred and assigned to, pursuant to the Bidding Procedures Order and the APA, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assigned Contract (including, but not limited to, those of the type described in Bankruptcy Code sections 365(b)(2), (e)(1), and (f)) that prohibits, restricts, or conditions such assignment or transfer. The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Purchaser.  The Debtors may assign each Assigned Contract in accordance with Bankruptcy Code sections 363 and 365, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of each Assigned Contract have been satisfied.

W.      All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising, or accruing prior to the date of the assignment or transfer to the Purchaser shall be deemed cured or satisfied upon payment by the Purchaser of the proposed Cure Cost, as set forth in the Notice of Assumption and Assignment, or any other cure amount reached by agreement after an Assigned Contract Objection, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in Bankruptcy Code section 365(b)(2), or the type of default concerning an unexpired lease of real property described in Bankruptcy Code section 365(b)(1) whether or not such Assigned Contract is an executory contract within the meaning of Bankruptcy Code section 365.  The Cure Costs amounts listed on the Notice of Assumption and Assignment, or any other cure amounts reached by agreement after an Assigned Contract Objection, reflect the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts.

X.      The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assigned Contracts.

Y.      Except for the Assumed Obligations and Cure Costs that will be paid or assumed as provided in the APA, neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest or Claim that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is

related to the Acquired Property prior to the Closing.  The Purchaser is not and shall not be deemed a "successor" to the Debtors or their estates, have, *de facto* or otherwise, merged with or into the Debtors, or be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors under any theory of law or equity as a result of any action taken in connection with the APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Property.

**Miscellaneous Provisions**

Z.      Upon closing of the Sale, this Sale Order shall be construed as and shall constitute for any and all purposes a full and complete assignment, conveyance and transfer of title to and all other right, title and interest in all of the Acquired Property and a bill of sale transferring good and valid title in such Acquired Property to the Purchaser pursuant to the terms of the APA.

AA.    This Sale Order and the APA (i) shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, any affected third parties, including (without limitation) all persons asserting a Claim or Interest relating to or in the Acquired Property, all successors and assigns of the Purchaser, the Debtors and their affiliates and subsidiaries and any subsequent trustee or other fiduciary appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and (ii) shall not be subject to rejection.  Nothing contained in any chapter 11 plan confirmed in these cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of this Order.

BB.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

CC.     To the extent that any provision of this Sale Order is inconsistent with the terms of the APA, this Sale Order shall govern.

DD.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Sale Order, the Bid Procedures Order and the APA in all respects and to decide any disputes arising between the Debtors and the Purchaser and/or their respective successors and assigns, with respect thereto.

EE.     Pursuant to the Bidding Procedures, the Back-up Bidder is directed to keep its bid open for acceptance by the Debtors until the date that is (i) thirty (30) days after the date of the Sale Hearing or (ii) the closing of the Sale with the Purchaser. If the Sale to the Purchaser does not close through no fault of the Debtors, the Debtors are authorized to consummate the Sale with the Back-up Bidder, and if the Sale is consummated with the Back-up Bidder, then the Back-up Bidder shall be entitled to all of the findings and protections of this Sale Order provided to the Purchaser.

FF.     Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry.

DATED:     8-24     , 2016

MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE