# PLAN EXHIBIT 1

**Liquidating Trust Agreement**

**LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST**

This Liquidating Trust Agreement and Declaration of Trust ("Liquidating Trust Agreement") is entered into as of the __ day of November, 2016, by and between Rotary Drilling Tools USA, LLC, Tubular Repair, LLC, Rotary Drilling Holdings IV, LLC, Pipe Coatings International LLC (the "Debtors") for the benefit of the Beneficiaries, and Allison D. Byman, as trustee hereunder (the "Liquidating Trustee").

## RECITALS

A.   On July 6, 2016 the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").  The cases are jointly administered under Case No. 16-33433 (the "Chapter 11 Cases").

B.   On September 27, 2016, the Debtors filed their Amended Joint Chapter 11 Plan of Liquidation (together with any further or additional amendments approved by the Bankruptcy Court, the "Plan").  The Bankruptcy Court entered an Order confirming the Plan (the "Confirmation Order") on October ___, 2016.  In the event of conflict between the terms of the Plan and this Liquidating Trust Agreement, the Plan will control and govern unless otherwise agreed to by all parties having an interest in the resolution of such conflict.

C.   The Plan provides for the creation of a Liquidating Trust, to be managed by a Liquidating Trustee, in order to: (i) receive, liquidate, and distribute certain Trust Assets as contemplated under the Plan; and, (ii) prosecute all Rights of Action, including without limitation Causes of Action and objections to Claims, on behalf of the Estates.  The Liquidating Trust will not be operated with the goal of continuing or engaging in the conduct of any trade or business, but shall be established for the sole purpose of liquidating and distributing the Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

## ARTICLE I:  DEFINITIONS

Section 1.01  Definitions. For all purposes of this Liquidating Trust Agreement, unless the context otherwise requires, the following terms will have the definitions indicated below, all of which are substantive terms of this Liquidating Trust Agreement. Capitalized terms that are not otherwise defined herein have the meanings ascribed to them in the Plan or in the Bankruptcy Code, as appropriate. Defined terms include, as appropriate, all genders and the plural as well as the singular.

(a)   "Accounts" means all accounts established by the Liquidating Trustee in the exercise of her judgment and reasonable discretion. Each such Account shall be established and maintained in the Liquidating Trust's name for the benefit of the Beneficiaries at an Eligible Institution in an account accessible only by the Liquidating Trustee, which bears a designation clearly indicating that the funds deposited therein are held on behalf of the Liquidating Trust for

the benefit of the Beneficiaries.   The Liquidating Trustee shall possess all right, title and interest in and to all funds on deposit in, and all Eligible Investments, if any, credited to, and in all proceeds of, the Accounts, which shall be under the sole dominion and control of the Liquidating Trustee on behalf of the Liquidating Trust.

(b)      "Acquired Assets" means assets of the Debtors being transferred to Purchaser in accordance with the Asset Purchase Agreement and defined in the Asset Purchase Agreement as "**Acquired Assets**."

(c)      "Administrative and Priority Claims Distribution Date" means the date, occurring as soon as practicable after the Effective Date, on which distributions are made pursuant to the terms of the Plan to holders of Allowed Administrative Claims (other than the PNC Adequate Protection Administrative Claim) and holders of Allowed Priority Claims.

(d)      "Administrative Claim" means any cost or expense of administration of the Chapter 11 Cases incurred on or before the Effective Date entitled to priority under § 507(a)(2) and allowed under § 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Estates, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, certain taxes, fines and penalties, any actual and necessary postpetition expenses of operating the Debtors' businesses, certain postpetition indebtedness or obligations incurred by or assessed against the Debtors in connection with the conduct of their businesses, or for the acquisition or lease of property, or for providing services to any Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Estates under chapter 123, title 28, United States Code. With respect to Administrative Claims that are allowed pursuant to §§ 503(b)(1), 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

(e)      "Administrative Claim Bar Date" means the last day to file an application for allowance of an Administrative Claim (other than (i) quarterly U.S. Trustee fees, (ii) Professional Fee Claims, or (iii) the PNC Adequate Protection Administrative Claim), which shall be 20 days after the Effective Date unless otherwise established by a Final Order.

(f)      "Allowed Administrative Claims" means an Administrative Claim to the extent it is or becomes an Allowed Claim.

(g)      "Allowed Amount" means the amount of an Allowed Claim.

(h)      "Allowed Claim" means, with reference to any Claim other than an Administrative Claim, any Claim against any Debtor that was (i) listed by such Debtor in its Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or (ii) evidenced by a timely-filed proof of Claim, as to which no objection to allowance has been filed, in accordance with section 8 of the Plan or such other

applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or any Claim expressly allowed by a Final Order.  With reference to an Administrative Claim, "Allowed Claim" means any Administrative Claim that is either: (i) deemed allowed pursuant to the Plan; or (ii) allowed pursuant to a Final Order approving a motion or application for allowance of such Administrative Claim.  Any Claim that is a Disputed Claim shall not constitute an Allowed Claim.

(i)      "Allowed General Unsecured Claim" means a General Unsecured Claim to the extent it is or becomes an Allowed Claim.

(j)      "Allowed Priority Claim" means a Priority Non-Tax Claim or Priority Tax Claim to the extent it becomes an Allowed Claim.

(k)      "Allowed Priority Non-Tax Claim" means a Priority Non-Tax Claim to the extent it is or becomes an Allowed Claim.

(l)      "Allowed Priority Tax Claim" means a Priority Tax Claim to the extent it is or becomes an Allowed Claim.

(m)      "Allowed Secured Claim" means a Secured Claim of a creditor to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not become an Avoided Lien.

(n)      "Asset Purchase Agreement" means the asset purchase agreement between the Debtors and Purchaser that governs the sale of the Acquired Assets.

(o)      "Asset Sale" means the sale of the Acquired Assets in accordance with the Asset Purchase Agreement.

(p)      "Available Cash" means all of the Liquidating Trust's Cash on hand on any particular date less: (i) amounts reserved on account of Disputed Claims; (ii) amounts reasonably reserved for unpaid Administrative Claims, Secured Claims, Priority Tax Claims and Priority Non-Tax Claims; (iii) amounts reasonably required by the Liquidating Trustee to retain professionals postconfirmation; and (iv) amounts reasonably required by the Liquidating Trustee to administer the Liquidating Trust and to complete the transactions and other actions required under the Plan, including the prosecution of Rights of Action.

(q)      "Avoidance Action" means any and all rights, claims and causes of action arising under sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code, or analogous provisions of state or other applicable law.

(r)      "Avoided Lien" means a Lien to the extent it has been set aside, invalidated, or otherwise avoided pursuant to an Avoidance Action.

(s)      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, and the Bankruptcy Local Rules for the Southern District of Texas, as applicable to these Chapter 11 Cases, each as in effect on the date of the event described herein.

(t)      "Beneficiaries" means holders of Allowed Administrative Claims (other than the

PNC Adequate Protection Administrative Claim), holders of Allowed Priority Tax Claims, holders of Allowed General Unsecured Claims, holders of Miscellaneous Secured Claims, holders of Allowed Priority Non-Tax Claims, and PNC as the holder of the PNC Prepetition Secured Claim, the PNC Adequate Protection Administrative Claim, and the PNC Deficiency Claim, as the same shall appear in the records of the Liquidating Trustee from time to time; provided, however, that upon the payment in full to a holder of any of the foregoing, to the extent provided for in the Plan, such holder shall cease to be a Beneficiary of the Liquidating Trust.

(u)     "Business Day" means any day other than a Saturday, a Sunday or a day on which national banking associations or state banking institutions in Houston, Texas are authorized or obligated by law or executive order or governmental decree to be closed.

(v)     "Causes of Action" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims, cross-claims, and the like (including, without limitation, all claims and any avoidance, recovery, subordination, or other actions against insiders and/or any other entities under the Bankruptcy Code), matured or unmatured, known or unknown, then existing or thereafter arising, of any of the Debtors, the Debtors-in-Possession, and/or the Estates that exist or may be pending on the Effective Date against any entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Confirmation Date, including, without limitation, the Causes of Action identified on Exhibit 3 to the Disclosure Statement; provided, however, that "Causes of Action" shall exclude any Causes of Action expressly released under the Plan.

(w)     "Cash" means legal tender of the United States of America, denominated in U.S. dollars, and equivalents thereof.

(x)     "Claim" means: (i) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or, (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(y)     "Collateral" means any property or interest in property of the Estates subject to a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(z)     "Committee" means the statutory committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to § 1102 of the Bankruptcy Code.

(aa)    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order.

(bb)    "Confirmation Order" means the order of the Bankruptcy Court approving and

confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

(cc)    "Corporate Trust Office" means the Liquidating Trustee's address, which is Hughes Watters Askanase, Total Plaza, 1201 Louisiana, 28th Floor, Houston, Texas 77002.

(dd)    "Debtors-in-Possession" means the Debtors in their capacity as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

(ee)    "Deficiency Claim" means the amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with § 506(a) of the Bankruptcy Code.  A Deficiency Claim is a General Unsecured Claim.

(ff)    "DIP Credit Facility" means the debtors-in-possession credit facility authorized on a final basis by the DIP Order.

(gg)    "DIP Order" means the Bankruptcy Court's *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis and (B) Use Cash Collateral and (II) Granting Adequate Protection, and (III) Granting Related Relief* (Dkt. No. 91), pursuant to which PNC was granted, and the Debtors stipulated that PNC holds, liens and security interests in all of the Debtors' assets as security for the "DIP Facility Advances" and the "Pre-Petition Obligations" as defined in the DIP Order.

(hh)    "Disclosure Statement" means the disclosure statement with respect to the Plan, including all exhibits and schedules thereto, filed by the Debtors and approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as may be amended or supplemented.

(ii)    "Disputed Claim" means a Claim against any Debtor that has not been allowed pursuant to the Plan or a Final Order and: (i) if no proof of Claim has been filed by the applicable deadline, a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated but as to which the Debtors or any other party in interest has interposed an objection or request for estimation that has not been withdrawn, settled, or otherwise resolved by a Final Order; or, (ii) if a proof of Claim or request for allowance or payment of an Administrative Claim has been filed by the applicable deadline, a Claim as to which a timely objection or request for estimation has been filed by the Debtors, Liquidating Trustee, or any other party in interest that has not been withdrawn, settled or otherwise resolved by Final Order.  Any Claim expressly allowed by a Final Order shall be an Allowed Claim, not a Disputed Claim.

(jj)    "Disputed Claims Reserve" means a reserve to be held by the Liquidating Trustee in trust for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan.

(kk)    "Distribution" means the Cash and other property required by the Plan to be distributed to the holders of Allowed Claims.

(ll)    "Distribution Date" means one or more dates identified by the Liquidating

5

Trustee, on which Distributions, either interim or Final, are made from Available Cash to holders of Allowed General Unsecured Claims.

(mm)   "Effective Date" means the day selected by the Debtors, in consultation with PNC and  the Committee, that is after the date the Confirmation Order becomes a Final Order and on which all conditions specified in Article 13 of the Plan have been satisfied or waived.

(nn)   "Eligible Institution" and "Eligible Investments" mean any depository institution and any securities in which the Liquidating Trustee could respectively deposit or invest funds of the Liquidating Trust if the Chapter 11 Cases had been filed under chapter 7 of the Bankruptcy Code and the Liquidating Trustee were appointed as a panel chapter 7 Trustee to administer such estates.

(oo)   "Estates" means the estates created upon the filing by the Debtors of the Chapter 11 Cases pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests pertaining thereto.

(pp)   "Final Distribution Date" means the date on which the Liquidating Trustee distributes all remaining Trust Assets immediately prior to the dissolution of the Liquidating Trust.

(qq)   "Final Order" means an order or judgment which has not been reversed, vacated or stayed and as to which: (i) the time to appeal, petition for *certiorari* or move for new trial, reargument or rehearing has expired and to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending; or, (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired.

(rr)   "General Unsecured Claim" means a Claim other than a Secured Claim, an Administrative Claim, or a Priority Claim.  General Unsecured Claims include the PNC Deficiency Claim.

(ss)   "Governmental Unit" shall have the meaning assigned in the Bankruptcy Code.

(tt)   "Holdback Amount" means that portion of the Net Sale Proceeds reserved pursuant to paragraph G of the Sale Order, and specifically includes the Vehicle Allowance.

(uu)   "Legal Proceeding" means any action, arbitration, audit, hearing, investigation, tax assessment, assessment, litigation or suit (whether civil, criminal, administrative, investigative or informal) commenced, brought, conducted or heard by or before, or otherwise involving, any Governmental Unit or arbitrator related to the Debtors.

(vv)   "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

(ww)    "Liquidating Trust" means the entity created pursuant to this Liquidating Trust Agreement and Section 7.2 of the Plan, to which all holders of Claims shall look for satisfaction of their Claims unless otherwise specifically set forth to the contrary in the Plan.

(xx)    "Miscellaneous Secured Claims" means Allowed Secured Claims other than the PNC Prepetition Secured Claim.

(yy)    "Net Sale Proceeds" means the net proceeds received by the Debtors from the Asset Sale.

(zz)    "North Dakota Property" means the real property owned by Tubular Repair, LLC, and located at 14084 Alpha Street NW, Williston, North Dakota.

(aaa)    "Noticing Agent" means Kurtzman Carson Consultants, LLC, the noticing, claims and balloting agent in these Chapter 11 Cases whose retention was approved by the Bankruptcy Court at Docket No. 26.

(bbb)    "Person" means an individual, corporation, business trust, partnership (general, limited, limited liability or otherwise), joint venture, association, joint stock company, limited liability company, trust, entity or unincorporated association.

(ccc)    "Petition Date" means July 6, 2016, the date on which the Debtors filed the voluntary chapter 11 petitions commencing these Chapter 11 Cases.

(ddd)    "Plan Rate" means the rate of interest, if any, that will be paid on Claims but only to the extent that the Plan specifies that interest will be paid on such Claims. For all nontax claims, the Plan Rate shall be 5% simple interest. The Plan Rate for tax claims shall be the applicable nonbankruptcy statutory rate determined as of the calendar month in which the Confirmation Order is entered. Interest shall be calculated from the Petition Date.

(eee)    "Post-Confirmation Committee" means the oversight committee established by this Liquidating Trust Agreement.

(fff)    "PNC" means PNC Bank, N.A.

(ggg)    "PNC Adequate Protection Administrative Claim" means the superpriority administrative claim of PNC granted pursuant to the DIP Order as adequate protection to PNC in respect of any diminution in value of the PNC Prepetition Secured Claim, which shall be in the amount of $200,000 and paid pursuant to the provisions of section 3.1.1 of the Plan. The PNC Adequate Protection Administrative Claim is automatically an Allowed Administrative Claim, without any further action by PNC, the Bankruptcy Court, or any other person or entity.

(hhh)    "PNC Deficiency Claim" means the General Unsecured Claim of PNC equal to the amounts owed by the Debtors as of the Petition Date, plus all amounts advanced to the Debtors under the DIP Credit Facility, less an amount equal to the Net Sale Proceeds minus the Holdback Amount, less the proceeds or value of any additional Collateral of PNC (including any Residual Holdback Amount). The PNC Deficiency Claim is automatically an Allowed General Unsecured Claim, without any further action by PNC, the Bankruptcy Court, or any other person

or entity.

(iii)    "PNC Prepetition Credit Documents" means, collectively: (i) the Revolving Credit, Term Loan, and Security Agreement dated as March 25, 2015, by and among PNC and the Debtors (the "PNC Credit Agreement"); and (ii) the other documents, instruments, contracts, and other agreements executed in connection with the PNC Credit Agreement.

(jjj)    "PNC Prepetition Secured Claim" means the Allowed Secured Claim of PNC, which is equal to the lesser of (a) the outstanding amount owed under PNC's prepetition credit agreement with the Debtors and the other documents and instruments executed in connection with the PNC Prepetition Credit Documents or (b) the value of PNC's remaining Collateral as of the Effective Date.  The PNC Prepetition Secured Claim is automatically an Allowed Secured Claim, without any further action by PNC, the Bankruptcy Court, or any other person or entity.

(kkk)    "Priority Claim" means any Claim (other than an Administrative Claim) to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

(lll)    "Priority Non-Tax Claim" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

(mmm)"Priority Tax Claim" means any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.  A Claim based upon an assessed *ad valorem* tax that is secured by a statutory lien on property that was administered during these Chapter 11 Cases is not a Priority Tax Claim, but is a Secured Claim to the extent of the value of the property administered.  Otherwise, such Claim is a General Unsecured Claim.

(nnn)    "Professional Fee Claims" means Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

(ooo)    "Pro Rata" means the proportion that the dollar amount of an Allowed Claim in a class bears to the aggregate amount of all Allowed Claims in such class.

(ppp)    "Purchaser" means Aplicaciones Tubulares, S.L., a company incorporated under Spanish Law, having its corporate office at Maximo Aguirre 18, BIS 7, 48011 Bilbao, Spain, registered with the Commercial Registry of Vizcaya under section 8, sheet 33078 and with Spanish tax number B48000715, and which is a wholly-owned subsidiary of Tubos Reunidos, S.A.

(qqq)    "Register" means a register in which the Liquidating Trustee shall cause to be kept, subject to any reasonably applicable regulations, a registration of the beneficial interests of the Beneficiaries.

(rrr)    "Residual Holdback Amount" means the amount of the Holdback Amount remaining after payment of all of the Debtors' pre-Effective Date operating expenses, all Allowed Administrative Claims, and all Allowed Priority Claims, less the Vehicle Allowance.

(sss)   "Rights of Action" include (i) any avoidance, recovery, subordination or other action of the Debtors, the Estates or the Liquidating Trust; (ii) any Cause of Action of the Debtors, the Estates or the Liquidating Trust; (iii) any objection or other challenge to a Claim; and, (iv) any objection or other challenge to an Interest.

(ttt)   "Sale Order" means the order (a) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief entered by the Bankruptcy Court at Docket No.125 and approving, among other things, the Asset Sale pursuant to the terms of the Asset Purchase Agreement.

(uuu)   "Secured Claim" means a Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of any interest in property of any Debtor's Estate securing such Claim, or any Claim to the extent that it is subject to setoff under § 553 of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is a Deficiency Claim.

(vvv)   "Schedules" means each of the Debtors' Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with § 521(a)(1) of the Bankruptcy Code.

(www)   "Subsidiary Columbia Interests" means all equity interests in Rotary Drilling Tools—Columbia, LLC owned by the Debtors.

(xxx)   "Subsidiary Equity Interests" means all equity interests in any subsidiary owned by any of the Debtors.

(yyy)   "Trust Assets" means (i) the Holdback Amount; (ii) the Rights of Action; (ii) the Subsidiary Equity Interests; (iii) the North Dakota Property; and, (iv) all other Excluded Assets, as defined in the Asset Purchase Agreement, and any other assets not sold to the Purchaser pursuant to the Asset Purchase Agreement.

(zzz)   "Trust Indemnified Party" means each of (a) the Liquidating Trustee, acting in her capacity as the Liquidating Trustee and/or in any other capacity contemplated by this Liquidating Trust Agreement or the Plan; and (b) each of the members of the Post-Confirmation Committee, acting in their capacities as members of the Post-Confirmation Committee and/or in any other capacity contemplated by this Liquidating Trust Agreement.

(aaaa)   "Vehicle Allowance" means the sum of $50,000.00, which is the agreed-upon value of the two vehicles that were included in the Acquired Assets and as to which the Committee has asserted that PNC does not hold a valid, perfected lien.

Section 1.02  Rules of Construction.  Except as otherwise expressly provided in this Liquidating Trust Agreement, or unless the context otherwise clearly requires an interpretation to the contrary: (a) any term that relates to the Plan, the Confirmation Order or any other document or statute, rule, or regulation includes all amendments, modifications, supplements or other changes (prior to the date of this Liquidating Trust Agreement) occurring since the document, statute, rule, or regulation came into being; (b) all accounting terms used in an accounting

context and not otherwise defined shall be construed in accordance with generally accepted accounting principles; and (c) all provisions and terms of this Liquidating Trust Agreement shall otherwise have meanings according to their common usage.

## ARTICLE II:  ORGANIZATION

Section 2.01 Name & Office.  The Liquidating Trust shall be known as the "RDT Liquidating Trust", in which name the Liquidating Trustee may conduct all business of the Liquidating Trust.  The office of the Liquidating Trust shall be maintained by the Liquidating Trustee at her Corporate Trust Office or any other address in Texas that the Liquidating Trustee may designate by notice to the Beneficiaries.

Section 2.02 Declaration of Trust.  For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to terms of the Plan, the Debtors execute this Liquidating Trust Agreement and, subject to the provisions of Section 2.04 below, irrevocably transfer, absolutely convey, set over and deliver to the Liquidating Trustee (and her successors and assigns, if any) all of her right, title and interest in and to the Trust Assets retained by and vesting in the Liquidating Trust pursuant to the Plan, in trust, to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Plan, except as may otherwise be specifically provided by the Plan. Such Trust Assets so held in trust shall be deemed for all purposes to have been retained by the Liquidating Trustee for enforcement and/or other disposition(s), for the benefit of all the Beneficiaries, as successor-in-interest to the Debtors and representative of the Estates pursuant to 11 U.S.C. § 1123(b)(3)(B).

Section 2.03 Appointment of Liquidating Trustee and Acceptance of Trust.  Effective as of the date hereof, the Liquidating Trustee is hereby appointed as trustee of the Liquidating Trust to have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Liquidating Trust.  The Liquidating Trustee, in the exercise of her business judgment and in her reasonable discretion, shall oversee the liquidation of the Trust Assets in a cost-effective manner in a reasonable time, with due regard for the risks that undue haste may minimize the liquidation proceeds of a particular Trust Asset. The Liquidating Trustee shall make continuing efforts to dispose of the Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust.  The Liquidating Trustee accepts the trust imposed hereunder and agrees to administer and hold the Trust Assets for the benefit of the Beneficiaries subject to the terms and conditions of this Liquidating Trust Agreement and the Plan.

Under the Plan, the Liquidating Trustee shall, for all purposes, directly and indirectly be deemed the representative of the Estates as the term is used in 11 U.S.C. § 1123(b)(3)(B) and have all rights and powers provided for in the Bankruptcy Code, including § 1107 thereof, in addition to any rights and powers granted in this Liquidating Trust Agreement and the Plan.  The Liquidating Trustee will further be deemed to be successor-in-interest to the Debtors with respect to any action or other matter which was or could have been commenced by the Debtors prior to the Effective Date and shall be deemed substituted for the same as the proper party-in-interest with standing to pursue any such contested actions or matters. All actions, claims, and other interests constituting Liquidating Trust Assets are hereby preserved and retained and may be enforced by the Liquidating Trustee as representative of the Estates pursuant to 11 U.S.C. §

1123(b)(3)(B). The Liquidating Trustee will be a party-in-interest as to, among other things, all matters over which the Bankruptcy Court has or retains jurisdiction.

Section 2.04 Tax Treatment of Trust.  For federal income tax purposes, the transfer of the Trust Assets to the Liquidating Trust will be deemed to be a transfer to the holders of Allowed Claims (who are the Beneficiaries of the Liquidating Trust), followed by a deemed transfer by such holders of Allowed Claims to the Liquidating Trust.  The Liquidating Trustee shall be responsible for withholding all taxes required by law, and shall timely file all required federal, state or local returns, and shall promptly pay all taxes (if any) as may be determined to be due. Therefore, to the extent that the operation or liquidation of Trust Assets creates tax liability for the Liquidating Trust, the Liquidating Trust shall promptly pay such tax liability from available Trust Assets, and any such payments shall be considered costs and expenses of the Liquidating Trust's operation.  If it is determined that any taxes are owed by the Liquidating Trust, the Liquidating Trustee may pay from available Trust Assets any such tax liability arising out of the operations of the Liquidating Trust or ownership of Trust Assets.  The Liquidating Trustee may establish a reserve sufficient to pay any accrued or potential tax liability arising out of the Liquidating Trust's operations or ownership of Trust Assets.

Section 2.05 Retention and Vesting of Assets; Valuation.  Except as otherwise provided by the Plan or this Liquidating Trust Agreement, upon the Effective Date of the Plan, title to the Trust Assets shall pass to and be deemed to be vested in and retained by the Trust free and clear of all liens, claims, interests and encumbrances, subject only to rights of holders of Allowed Claims as set forth in the Plan.  Any valuation of the Trust Assets approved by the Bankruptcy Court as part of the Plan confirmation process shall be consistently used by the Liquidating Trustee and Beneficiaries for all federal and applicable state income tax reporting purposes but shall not otherwise limit the Liquidating Trustee with regard to any other aspects of the performance of her duties and exercise of her powers under this Liquidating Trust Agreement or the Plan.

Section 2.06 Nature and Purpose of Trust.  The Liquidating Trust is a liquidating trust pursuant to which the Liquidating Trustee is to hold Trust Assets and oversee its liquidation in accordance with this Liquidating Trust Agreement and the Plan. This Liquidating Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or other association, nor shall the Liquidating Trustee or Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Liquidating Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and her rights shall be limited to those conferred upon her by this Liquidating Trust Agreement.

Section 2.07 Post-Confirmation Committee.  A Post-Confirmation Committee, consisting of PNC and one member from the Committee, is hereby established. The members of the Post-Confirmation Committee shall each serve through a designated representative.  The members may change their designated representative from time to time by written notice to the Liquidating Trustee and the other member.  The Post-Confirmation Committee shall have and may exercise

such powers as set forth in this Liquidating Trust Agreement. The Post-Confirmation Committee shall act by unanimous vote; however, in the event of an impasse between the members of the committee, either member may seek assistance from the Bankruptcy Court.

## ARTICLE III:  BENEFICIARIES

Section 3.01 Rights of Beneficiaries.  Each Beneficiary shall take and hold its uncertificated beneficial interest subject to all of the terms and provisions of this Liquidating Trust Agreement and the Plan, but shall have no legal title to, right to, possession of, management of, or control of Trust Assets except as herein expressly provided. The interest of a Beneficiary in the Liquidating Trust is in all respects personal property, and upon death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to a legal representative of such Beneficiary; provided, however, that neither such death, insolvency or incapacity, nor any other transfer by operation of law (or otherwise), shall terminate or affect the validity of this Liquidating Trust Agreement or entitle any successor, transferee surviving spouse, heir or devisee of any Beneficiary to an accounting, to a transfer to it of title to any Trust Assets, or to any right of dower, homestead, inheritance or any partition, or any other right, statutory or otherwise.

Section 3.02 Identification of Beneficial Interests.  The Liquidating Trustee shall create and maintain, at the Corporate Trust Office or any other place designated by the Liquidating Trustee, a registration of Beneficiaries' beneficial interests.

Section 3.03 Prohibition on Transfers of Beneficial Interests.  Subject to § 3.01 of this Liquidating Trust Agreement, and notwithstanding any purported agreement to the contrary between a Beneficiary and any third-party, beneficial interests of any Beneficiary in the Liquidating Trust shall not be transferable at any time on or after the Effective Date of the Debtors' confirmed Plan. Under the Plan and subject to § 3.01 above, the Liquidating Trustee shall be entitled to disregard any purported or intended transfer, assignment, hypothecation, pledge, exchange or conveyance of any beneficial interest in the Liquidating Trust subsequent to the Effective Date of the confirmed Plan.

Section 3.04 Tax ID Numbers or Other Documents.  The Liquidating Trustee may require any Beneficiary to furnish: (i) their employer or taxpayer ID number as assigned by the Internal Revenue Service; and/or (ii) such other records or documents necessary to satisfy his tax reporting obligations. The Liquidating Trustee may condition payment of any distribution to any Beneficiary upon the receipt of such identification number, records or documents.

Section 3.05 Exemption for Registration.  Pursuant to § 1145 of the Bankruptcy Code, the interests of the Beneficiaries in distributions from the Liquidating Trust shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. The interests of the Beneficiaries in distributions from the Liquidating Trust shall be exempt from registration under the Securities Exchange Act of 1934 and the Investment Company Act of 1940 because: (i) the interests in the Liquidating Trust will not be represented by certificates; (ii) the Liquidating Trust exists for the sole purpose of liquidating and distributing the Trust Assets; (iii) the Liquidating Trust shall only exist for the period of time necessary to liquidate and distribute to the Beneficiaries the Trust Assets; (iv) the

Bankruptcy Court shall have continuing jurisdiction over all matters related to the Liquidating Trust; and (v) the interests in the Liquidating Trust will not be transferable, except as set forth in this Liquidating Trust Agreement.

## ARTICLE IV:  LIQUIDATING TRUSTEE

Section 4.01 Appointment & Tenure of Liquidating Trustee.  The Liquidating Trustee will be Allison D. Byman. The Liquidating Trustee will serve for the Liquidating Trust's duration, or otherwise until her resignation, death or removal.  The Liquidating Trustee, whose authority will be effective as of the Plan's Effective Date, shall be entitled to engage in all such activities as they deem appropriate that are not in conflict with the Liquidating Trust's interests. Her authority will remain and continue in full force and effect until Trust Assets are fully liquidated and distributed in accordance with the Plan, and all tax returns or any other filings or reports have been filed with appropriate state or federal authorities.

Section 4.02 Compensation. As compensation for services as Liquidating Trustee, and under any other agreements to which the Liquidating Trustee is a party as contemplated by the Plan, the Liquidating Trustee shall receive as compensation for services the statutory fee payable to trustees appointed in cases under chapter 7 or chapter 11 of the Bankruptcy Code, in accordance with Bankruptcy Code § 326 and subject to Bankruptcy Court approval as provided in that section.  The Liquidating Trustee may engage professionals on behalf of the Liquidating Trust on any reasonable terms and conditions of employment.  The Liquidating Trustee and all professionals employed by the Liquidating Trustee shall be entitled to payment of her fees and reimbursement of all reasonable expenses on a monthly basis.  Prior to receiving any such fees and reimbursement of such expenses, the Liquidating Trustee and all professionals employed by the Liquidating Trustee shall provide invoices and other documentation supporting the amounts sought to the Post-Confirmation Committee, who shall have fifteen (15) days after receipt to object to payment of such amounts.  If no such objection is interposed within fifteen days after receipt, the Liquidating Trustee and other professionals seeking payment shall be entitled to payment of 100% of fees and expenses sought.  If an objection is interposed by the Post-Confirmation Committee, and the objection cannot be consensually resolved, the objection shall be resolved by order of the Bankruptcy Court; provided, however, that the Liquidating Trustee shall pay any portion of such fees that is not subject to objection.

Section 4.03 Authority.  Subject to any express limitations, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in the Plan, the Confirmation Order and this Liquidating Trust Agreement.  The Liquidating Trustee is authorized and shall have the obligation to take all such actions necessary and appropriate in her judgment to effectuate the purposes of the Plan, including but not limited to the following:

(a)      Make all Distributions contemplated under the Plan;

(b)      Consistent with maintaining the value and liquidating the residual assets of the Liquidating Trust, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof;

(c)     Supervise and administer the resolution, settlement and payment of Claims and the distributions to the holders of Allowed Claims in accordance with the Plan;

(d)     Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under this Liquidating Trust Agreement or the Plan;

(e)     Transfer to the holder of any Allowed Secured Claim the Collateral securing that Claim on the terms and conditions set forth in Sections 6.1 and 6.2 of the Plan;

(f)     Abandon any other of the assets of the Liquidating Trust if the Liquidating Trustee concludes that such assets are of no material benefit; provided, however, that the Liquidating Trustee will not abandon assets with a value in excess of $10,000 without first obtaining the written consent of the Post-Confirmation Committee;

(g)     Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any Legal Proceeding, proceeding involving the Chapter 11 Cases, administrative proceeding, arbitrative proceeding or other nonjudicial proceeding and litigate claims on behalf of the Liquidating Trust, including without limitation all state and federal causes of action or any other litigation constituting an asset of the Liquidating Trust and pursue to settlement or judgment such actions;

(h)     Act in the name of or in the place of the Liquidating Trust in any action before the Bankruptcy Court or any other judicial or administrative body;

(i)     Take actions and exercise remedies against any entity that owes money to the Liquidating Trust, including without limitation, the remedies available under any deed of trust, security agreement, contract, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

(j)     Select and employ such professionals, consultants, agents or employees as the Liquidating Trustee deems necessary to assist in the administration of the affairs of the Liquidating Trust and compensate such persons;

(k)     Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with the Plan;

(l)     Propose any amendment, modification or supplement to the Plan, this Liquidating Trust Agreement, or any other of the Liquidating Trust's governing documents;

(m)     File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

(n)     Receive, conserve and manage the assets of the Liquidating Trust and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial, and

execute such deeds, bills of sale, assignments and other instruments in connection therewith; provided, however, that notwithstanding any of the foregoing the Liquidating Trustee shall not dispose of the North Dakota Property without the approval of the Post-Confirmation Committee;

(o)     Open and maintain Accounts on behalf of or in the name of the Liquidating Trust;

(p)     Pay all taxes, make all tax withholdings and file tax returns and tax information returns and make tax elections by and on behalf of the Liquidating Trust;

(q)     Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust;

(r)     Enforce all provisions of the Plan, including all rights under the Asset Purchase Agreement or similar agreement and any payment or allocation of Net Sale Proceeds;

(s)     Protect, perfect and defend the title to any of the assets of the Liquidating Trust and enforce any bonds, mortgages or other obligations or liens owned by the Liquidating Trust;

(t)     Carry insurance coverage, including insurance to protect the Liquidating Trust and the Liquidating Trustee against claims brought against the Liquidating Trust or the Liquidating Trustee acting within his capacity with the Liquidating Trust, in such amounts as he/she may deem advisable;

(u)     Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust (including without limitation the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust

(v)     Take such actions as are necessary to wind up the Debtors' affairs and complete a dissolution under applicable law; and

(w)     Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan.

Section 4.04  Obligations of the Liquidating Trustee.  Notwithstanding anything in the Plan or this Liquidating Trust Agreement to the contrary, the Liquidating Trustee shall have the following duties:

(a)     The Liquidating Trustee shall cause to be prepared a quarterly report setting out: (i) receipts and disbursements during the prior quarter, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, and (iv) a summary listing of the status of the resolution of objections to Claims and Causes of Action.  Such quarterly report shall be filed with the Bankruptcy Court within fifteen (15) business days after the end of the relevant report preparation period.

(b)     The Liquidating Trustee shall maintain records and books of account relating to the Liquidating Trust's assets, the management thereof and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust.  The Liquidating Trustee shall also maintain records and books of account relating to all Distributions contemplated under the Plan;

(c)     The Liquidating Trustee shall provide a monthly accounting to the Post-Confirmation Committee setting out: (i) receipts and disbursements during the month, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, and (iv) a summary listing of the status of the resolution of objections to Claims and Causes of Action.

(d)     The Liquidating Trustee, shall, upon the request of a member of the Post-Confirmation Committee, provide such Post-Confirmation Committee Member with commercially reasonable access to books, records, or other information pertaining to the Liquidating Trust, the Plan, and/or Trust Assets.

Section 4.05   Limitation on the Powers of the Liquidating Trustee.   Notwithstanding anything in the Plan or this Liquidating Trust Agreement to the contrary, the Liquidating Trust shall not include any Acquired Assets or Assumed Obligations (as defined in the Asset Purchase Agreement), and the Liquidating Trustee shall not have power over any such assets or liabilities; provided, however, that the Liquidating Trustee shall be authorized to prosecute and resolve and disputes as to Cure Costs (as defined in the Asset Purchase Agreement).

Section 4.06 Resignation/Removal of the Liquidating Trustee.   The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court.   Any such resignation shall become effective on the earlier to occur of: (i) sixty (60) days after the filing date of such notice; or, (ii) the appointment of a successor Liquidating Trustee.   The Liquidating Trustee may only be removed by either: (i) order of the Bankruptcy Court for cause pursuant to a motion; or (ii) by vote of the Post-Confirmation Committee (without the need for any further motion before or order of the Bankruptcy Court).

Section 4.07 Appointment of Successor Liquidating Trustee.   In the event of the death, resignation or removal of the Liquidating Trustee, the Post-Confirmation Committee shall designate a successor Liquidating Trustee.   Any successor Liquidating Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

## ARTICLE V:  DISTRIBUTIONS

Section 5.01 Distributions to Holders of Allowed Priority Claims and Certain Holders of Allowed Administrative Claims.   The Liquidating Trustee shall pay holders of Allowed Priority Claims and holders of Allowed Administrative Claims (other than the PNC Adequate Protection Administrative Claim) in Cash and in full from the Holdback Amount on the later of: (i) the Administrative and Priority Claims Distribution Date; (ii) the date on which the Claim of such holder becomes an Allowed Claim; or, (iii) any other date as the Liquidating Trustee and such holder shall agree.

Section 5.02 Distributions to PNC as Holder of the PNC Prepetition Secured Claim. In full and final satisfaction of the PNC Prepetition Secured Claim, PNC shall receive: (a) the Residual Holdback Amount; (b) fifty percent (50%) of all value received from the sale or other disposition

of the Subsidiary Columbia Interests; and, (c) at the election of PNC (i) the proceeds of all other Collateral securing the PNC Prepetition Secured Claim (including any proceeds of all other Collateral of PNC that is transferred into, or held by, the Liquidating Trust), if any, and/or (ii) all other Collateral securing such PNC Prepetition Secured Claim (including any Collateral of PNC that is transferred into, or held by, the Liquidating Trust).  The timing of Distributions under this Section 5.02 is within the reasonable discretion of the Liquidating Trustee.

Section 5.03 Distributions to Holders of Miscellaneous Secured Claims.  In the reasonable discretion of the Liquidating Trustee, the holder of a Miscellaneous Secured Claim shall receive either: (i) the proceeds of the Collateral (including, if applicable, the proceeds of the Asset Sale) securing such Miscellaneous Secured Claim (up to the amount of the holder's Miscellaneous Secured Claim) after satisfaction in full of all superior liens; or, (ii) the Collateral securing such Miscellaneous Secured Claim in full and final satisfaction of such Miscellaneous Secured Claim. The timing of Distributions under this Section 5.03 is within the reasonable discretion of the Liquidating Trustee.

Section 5.04  Distributions to Holders of Allowed General Unsecured Claims.  Except as set forth below in Section 5.05, the Liquidating Trustee shall distribute Available Cash Pro Rata to holders of Allowed General Unsecured Claims and/or the Disputed Claims Reserve, if applicable, on one or more interim Distribution Date(s) and the Final Distribution Date.  The Liquidating Trustee shall have the right, but not the obligation, to make interim Distributions to holders of Allowed General Unsecured Claims from Available Cash on such interim Distribution Dates as the Liquidating Trustee determines appropriate.  In the event that holders of Allowed General Unsecured Claims are paid in full and there exists remaining Available Cash, holders of Allowed General Unsecured Claims shall receive interest at the Plan Rate.

Section 5.05   Distributions to PNC as Holder of the PNC Adequate Protection Administrative Claim.  On account of PNC's Adequate Protection Administrative Claim, the Liquidating Trustee shall pay PNC the first two hundred thousand dollars ($200,000) distributed from the Liquidating Trust of funds that are not subject to any lien asserted by PNC and that constitute Available Cash, after the Liquidating Trust has distributed a total of $1,500,000 in funds that are not subject to any lien asserted by PNC to holders of Allowed General Unsecured Claims.

Section 5.06   Distributions to Holders of Disputed Claims.  Within ten (10) Business Days after such time as a Disputed Claim becomes an Allowed Claim, but in no event earlier than the first Distribution Date, any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim in an amount proportionate to the Allowed Amount of any such Claim.  In the event that the Disputed Claim is disallowed in whole or in part, or otherwise settled in an amount less than the Disputed Claim amount, the disallowed or reduced portion of such Claim shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims as Available Cash on the next Distribution Date in accordance with the Plan without further approval from or notice to any person or entity.

Section 5.07 Final Distribution.  If the Liquidating Trustee determines that the remaining

Trust Assets may be conveniently distributed, or if the Liquidating Trust's existence shall terminate, the Liquidating Trustee shall, as expeditiously as is consistent with the conservation of Trust Assets, distribute remaining Trust Assets to the Beneficiaries, in accordance with the treatment, terms and conditions regarding the type of Distributions to be made to such Beneficiaries set forth in this Liquidation Trust Agreement, subject to any appropriate reserves.

Section 5.08 Record Date for Claims.  The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court entered its order conditionally approving the Disclosure Statement.   For purposes of Distributions to holders of Allowed Claims, the Liquidating Trustee will rely on the claims docket maintained by the Noticing Agent except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the record date pursuant to Bankruptcy Rule 3001.

Section 5.09 Delivery of Distributions to Holders of Allowed Claims.   Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed, unless the holder of the Allowed Claim has otherwise notified the Liquidating Trustee in writing of a change of address.  If any holder's Distribution is returned as undeliverable, it will be treated in accordance with Section 5.11 herein.  The Liquidating Trustee may, but shall not be required to make any Distribution of less than $25.00 (other than Distributions on the Final Distribution Date).

Section 5.10 Unclaimed Distributions.  The Liquidating Trustee shall file a notice of distribution with the Bankruptcy Court within ten (10) Business Days after the date on which Distributions are made under the Plan.  All claims for undeliverable Distributions must be made no later than the 60th day following the date that the notice of distribution is filed.  After such date, all unclaimed Distributions will revert to the Liquidating Trust for distribution in accordance with the Plan and the remaining Claim of any holder with respect to such Distribution will be discharged and forever barred.

Section 5.11 Uncashed Checks.  Checks issued in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Distributions with respect to such unnegotiated checks will revert to the Liquidating Trust for distribution in accordance with the Plan and the remaining Claim of any holder with respect to such Distribution will be discharged and forever barred.

**ARTICLE VI: TRUST ADMINISTRATION AND CLAIM OBJECTION PROCESS**

Section 6.01  Objection Process.  The Liquidating Trustee on behalf of the Liquidating Trust shall have the sole right to object to the allowance of any Claims provided for under the Plan.  Subject to the preceding sentence, all objections shall be litigated to Final Order; provided, however, that the Liquidating Trustee shall have the authority to compromise, settle or otherwise resolve all objections.  Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall file and serve all objections to Claims no later than: (i) 120 days after the later of (a) the Effective Date or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court; or, (ii) such other date as may be approved by the

Bankruptcy Court after notice and hearing.

Section 6.02 Disputed Claims Reserve.   The Liquidating Trustee shall establish a Disputed Claims Reserve for the treatment of Disputed Claims.  The Disputed Claims Reserve shall be either held in a separate Account from all other funds held by the Liquidating Trust or segregated by book entry in the Liquidating Trustee's accounting records.  On each Distribution Date, the Liquidating Trustee shall deposit into a Disputed Claims Reserve an amount equal to the Pro Rata share of the Distribution allocable to such Disputed Claims, in accordance with the distribution scheme contemplated in the Plan, as if such Claims were Allowed Claims.  Amounts deposited into the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Disputed Claims pending a determination of their entitlement thereto under the terms of the Plan. Once such Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Liquidating Trustee is authorized make Distributions in respect of the Allowed Amount of such Claim called for under the Plan without further approval from or notice to any person or entity.

Section 6.03 Filing of Causes of Action.   The Liquidating Trustee shall have the exclusive right to file and prosecute any Rights of Action on behalf of the Liquidating Trust, including all derivative Causes of Action.  The Liquidating Trustee shall have the authority to compromise, settle or otherwise resolve all Claims and Causes of Action pursuant to the provisions of the Liquidating Trust Agreement.

Section 6.04 Operating Expenses.  The Liquidating Trustee will draw on Trust Assets to pay all costs and expenses related to the care and maintenance of Trust Assets, including, without limitation: (i) costs of maintaining, selling or otherwise liquidating Trust Assets including, *inter alia*, all fees and expenses of the Liquidating Trustee and her professionals relating to the prosecution of any litigation or objections to claims; and (ii) any other expenses of the Liquidating Trust.

Section 6.05 Tax Matters & Other Reports.   To the extent, if any, required under any applicable laws in conjunction with the tax treatment to be accorded the Liquidating Trust pursuant to § 2.04 above, the Liquidating Trustee shall periodically: (a) deliver to Beneficiaries all requisite notices, statements or other reports; and (b) file tax returns and other reports or filings with governmental authorities on behalf of the Liquidating Trust.  All income, expense and loss realized upon full liquidation of the Trust Assets – if any – shall be allocated consistent with provisions of § 2.04 above.

Section 6.06 Protection of Persons Dealing with Trust.  Any transfer of the Trust Assets, or any part thereof, shall bind the Beneficiaries and shall be effective to transfer all right, title and interest of the Liquidating Trustee and Beneficiaries in and to the Trust Assets or such part thereof.  No purchaser of the Trust Assets or any portion thereof shall be required to inquire as to the authorization, necessity, expediency or regularity of such transfer or as to the application of any proceeds thereof. Any person dealing with the Liquidating Trustee shall be fully protected in relying upon a certificate signed by the Liquidating Trustee stating that they have authority to take any action under this Liquidating Trust Agreement.

## ARTICLE VII: DURATION OF LIQUIDATING TRUST

Section 7.01 Duration of Liquidating Trust.  This Liquidating Trust shall terminate, not later than one hundred and twenty (120) days after the last to occur of: (i) the liquidation of all assets of the Liquidating Trust, including the resolution by judgment or settlement of all claims or Causes of Action held or asserted by the Liquidating Trust, and the collection by the Liquidating Trustee of all such judgments or settlements, or the determination by the Liquidating Trustee, after notice to all creditors (and approval by the Bankruptcy Court in the event any objection thereto is filed), that any such assets, claims, judgments, or settlements ought to be abandoned or written off as uncollectible or of negligible value; and, (ii) the final resolution of all objections to Claims, so that all Claims asserted against the Debtors have become either finally allowed or finally disallowed.  Notwithstanding the foregoing, the Liquidating Trust shall terminate on the fifth (5th) anniversary of the Effective Date unless the Liquidating Trustee (with Bankruptcy Court approval obtained within six (6) months of the beginning of such extended period) determines that the extension of the Liquidating Trust term for a specified finite term is necessary.  Upon termination of the Liquidating Trust, the Liquidating Trustee shall have no further obligations to Beneficiaries or holders of Allowed Claims.

Section 7.02 Continuance of Trust for Winding Up.  After termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until her duties have been fully performed. Upon distribution of the entire Trust Assets, the Liquidating Trustee shall retain for a period of two (2) years the books, records, Beneficiary lists, Register, and certificates and other documents and files which shall have been delivered to or created by the Liquidating Trustee. All fees or costs associated with the preservation of such books, records, Beneficiary lists, Register, or certificates and other documents or files shall be reserved and/or prepaid by the Liquidating Trustee as an administrative expense of the Liquidating Trust prior to any final distribution of Trust Assets.  At the Liquidating Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Liquidating Trust; provided, that the Liquidating Trustee may provide notice of the proposed destruction of such materials to the Debtors. Except as otherwise specifically provided herein, upon the discharge of all obligations of the Liquidating Trust, final distribution of the entire Trust Assets, the Liquidating Trustee shall have no further duties or obligations hereunder and shall be discharged from all liability to the Liquidating Trust or to any Person who has had or may then or thereafter have an interest in the Liquidating Trust for acts or omissions in the capacity of Liquidating Trustee or in any other capacity contemplated by this Liquidating Trust Agreement or the Plan.

## ARTICLE VIII:  INDEMNIFICATION; LIMITATIONS ON LIABILITY

Section 8.01 General Indemnification.  Each Trust Indemnified Party shall not be personally liable in connection with the affairs of the Liquidating Trust, to the Liquidating Trust or any Person, except for such acts or omissions as shall be determined by a court of competent jurisdiction to constitute fraud, willful misconduct or gross negligence.  No Trust Indemnified Party shall be personally liable to the Liquidating Trust or to any Person for the acts or omissions of any officer, employee, or agent of the Liquidating Trust or any other Trust Indemnified Party unless the Liquidating Trustee or other Trust Indemnified Party (as applicable) acted with willful

misconduct or gross negligence in the selection, retention or supervision of the officer, employee, or agent retained by or acting on behalf of such Trust Indemnified Party.  No Trust Indemnified Party shall be personally liable to the Liquidating Trust or to any Person for the acts or omissions of any officer, employee, or agent that was not retained or employed by such Trust Indemnified Party.

The Liquidating Trust shall indemnify and hold harmless any Person who was, or who is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such Person is or was a Trust Indemnified Party, or an employee of a Trust Indemnified Party, or an agent, attorney, accountant or other professional for a Trust Indemnified Party, against all costs, expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of willful misconduct or gross negligence. Costs or expense incurred by any such entity in defending any such action, suit or proceeding may be paid by the Liquidating Trust in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Liquidating Trustee. The Liquidating Trustee may purchase and maintain insurance on behalf of any Person who is a beneficiary of this provision.

Any indemnification payments made to or for the benefit of any Trust Indemnified Party or any Person acting for or on behalf of a Trust Indemnified Party, shall not be made from the Holdback Amount.

Section 8.02 No Recourse.  Except as provided in the Plan and this Liquidating Trust Agreement, no recourse shall ever be had, directly or indirectly, against any Trust Indemnified Party personally, or against any agent, attorney, accountant or other professional for any Trust Indemnified Party by legal or equitable proceedings, or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trustee or any other Trust Indemnified Party under the Plan or this Liquidating Trust Agreement, or by reason of the creation of any indebtedness by the Liquidating Trustee under the Plan or this Liquidating Trust Agreement for any purpose authorized by the Plan or this Liquidating Trust Agreement, it being expressly understood and agreed that all such liabilities, covenants and agreements shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the terms of any such agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets.

Section 8.03 Limited Liability.  No Trust Indemnified Party shall be liable for any act it may do or omit to do in its capacity as a Trust Indemnified Party while acting in good faith and in the exercise of its reasonable judgment, and the fact that such act or omission was advised by an attorney for such Trust Indemnified Party shall be evidence of such good faith and reasonable judgment; nor shall any Trust Indemnified Party be liable in any event except to the extent determined to be the result of its own willful fraud or willful misconduct or gross negligence. Such limitation on liability applies equally to agents, professionals and/or employees of a Trust Indemnified Party acting on behalf of a Trust Indemnified Party in the fulfillment of its duties under the Plan and this Liquidating Trust Agreement. Neither the Trust Indemnified Parties, nor

21

their agents, professionals or employees, nor any Beneficiaries will be personally liable with respect to any liabilities or obligations of the Liquidating Trust or liabilities or obligations relating to the Trust Assets, including, without limitation, those arising under this Liquidating Trust Agreement or with respect to the Liquidating Trust or the Trust Assets, and all persons dealing with the Liquidating Trust must look solely to the Trust Assets for the enforcement of any claims against the Liquidating Trust or the Trust Assets.

Section 8.04 No Liability for Predecessor Acts.  No successor Trust Indemnified Party shall be in any way responsible or liable for the acts or omissions of any predecessor in office prior to the date on which such Person becomes a Trust Indemnified Party, nor shall such successor Trust Indemnified Party be obligated to inquire into the validity or propriety of any act or omission unless such successor Trust Indemnified Party expressly assumes such responsibility. Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Trust Assets furnished to such successor Liquidating Trustee by their predecessor and shall further be responsible only for those Trust Assets included in such statement.

Section 8.05 Express Exculpatory Clauses in Instruments.  As is practicable, the Liquidating Trustee shall cause any written instrument creating an obligation of the Liquidating Trust to make a reference to this Liquidating Trust Agreement and to provide that neither the Liquidating Trustee, nor any professionals for the Liquidating Trustee, shall be liable thereunder and that other parties to such instrument shall look solely to the Trust Assets for the payment of any claim thereunder or the performance thereof; provided, however, that the omission of such provision from any such instrument shall not render any Beneficiary, the Liquidating Trustee, or professionals for the Liquidating Trustee liable to anyone for such omission.

## ARTICLE IX:  MISCELLANEOUS PROVISIONS

Section 9.01 Notices.  All notices, requests or other communications among the parties hereto shall be in writing and shall be sufficiently given only if: (i) delivered in person; (ii) sent by fax communication evidenced by a confirmed transmission report; (iii) sent by registered or certified mail, return receipt requested; (iv) sent by commercial delivery service or courier; or, (v) sent by email to any recipient who has agreed to delivery of notice by such method. Absent any future changes of address, all notices, requests and other communications shall be sent to the parties at the following addresses and/or fax numbers:

     *Liquidating Trustee, to:*                                 *With copy to counsel:*

Any party from time to time may change their address, fax number or other information for the purpose of notices to that party by giving notice specifying such change to the other parties hereto.

As to any reports or other notices to be periodically provided hereunder by the Liquidating Trustee to Beneficiaries, unless otherwise expressly provided for in the Plan, the delivery of such report or notice shall be deemed sufficient if the Liquidating Trustee delivers a copy of the same, electronically or through such other means as are authorized by the Plan, to: (i) all Beneficiaries; (ii) the Debtors; (iii) all other parties in interest who make a written request for notice to the Liquidating Trustee; and, (iv) any counsel of record for the above-identified recipients.

Section 9.02 Effectiveness, Counterparts & Amendments.   This Liquidating Trust Agreement shall become effective upon the Effective Date of the Plan and it may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument. This Liquidating Trust Agreement may be amended from time to time, without modifying the Plan, with approval of the Liquidating Trustee and Post-Confirmation Committee, except that this Liquidating Trust Agreement shall not be amended to materially alter the priority of Claims or distribution scheme under the Plan.  In addition, any amendment of the provisions of this Liquidating Trust Agreement relating to governance of the Liquidating Trust or any other material amendment of this Liquidating Trust Agreement shall only be effective upon the approval of the Liquidating Trustee, Post-Confirmation Committee, and the Bankruptcy Court.

Section 9.03 Governing Law & Severability.   Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, this Liquidating Trust Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of Texas.  Any provision of this Liquidating Trust Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Liquidating Trust Agreement or affecting the validity or enforceability of any of the terms or provisions of this Liquidating Trust Agreement in any other jurisdiction.

Section 9.04 Entire Agreement.   This Liquidating Trust Agreement (including recitals), the Plan, and the Confirmation Order constitute the entire agreement among the parties and supersede all the parties' prior or contemporaneous agreements, understandings, negotiations and discussions, written or oral, relating to any transaction contemplated hereunder.  There are no representations, warranties, covenants or obligations except as are set forth herein or therein. Except as otherwise specifically provided herein or therein, nothing in this Liquidating Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Liquidating Trust Agreement.

Section 9.05 Waiver.   No failure or delay of any party to exercise any right or remedy pursuant to this Liquidating Trust Agreement shall affect such right or remedy or constitute a waiver by such patty of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

Section 9.06 Jurisdiction.  The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust, including, without limitation, the administration and activities of the Liquidating Trust, provided, however, that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Liquidating Trustee shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any Causes of Action.

IN WITNESS WHEREOF, all the parties hereto have executed this Liquidating Trust Agreement or caused this Liquidating Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first written above.

ROTARY DRILLING TOOLS USA, LLC

By: _____
Name:
Title:

TUBULAR REPAIR, LLC

By: _____
Name:
Title:

ROTARY DRILLING HOLDINGS IV, LLC

By: _____
Name:
Title:

PIPE COATINGS INTERNATIONAL, LLC

By: _____
Name:
Title:

_____
Allison D. Byman as Liquidating Trustee